(691 P.2d 42)
No. 56,490

Linda S. Downes, *Appellee,* v. IBP, Inc., *Appellant.*

Opinion filed November 21, 1984.

*Michael W. Merriam,* of Colmery, McClure, Letourneau, Entz & Merriam, P.A., of Topeka, for the appellant.

*Gary L. Jordan,* of Ottawa, for the appellee.

Before Foth, C.J.; Terry L. Bullock, District Judge, Assigned; and Frederick Woleslagel, District Judge Retired, Assigned.

Bullock, J.: Defendant Iowa Beef Processors, Inc. (IBP) appeals from a 75% permanent partial workers' compensation disability award entered against it by the district court.

Linda Downes worked for IBP as a trimmer on the arm and brisket lines. Her job involved the use of a hook in one hand and a knife in the other as she hourly handled about 500 pieces of meat weighing 8 to 12 pounds each. In the course of an average eight-hour day, therefore, Downes handled approximately 4,000 pieces of meat weighing 32,000 to 48,000 pounds in the aggregate. After working this regime for about two years, Downes began to experience pain through her lower arms and wrists and into her palms.

The company doctor examined Downes and then sent her to Dr. Huston in Topeka. Dr. Huston told her she should not be an arm and brisket trimmer and the company removed her from that job. For the next year, Downes attempted to work other jobs at IBP. Even during lighter work she experienced tremendous pain in her hands and wrists which grew worse the longer she worked. Eventually, the doctors she consulted advised her to quit the job.

At the time of the workers' compensation hearing, the condition of Downes' wrists and hands made it difficult for her even to brush her teeth. She was of the opinion that she could not do any of her old jobs at IBP because of the pain occurring when she gripped with her hands or moved her wrists.

Two of the doctors who examined Downes believed that she had carpal tunnel syndrome. The third doctor did not believe that her symptoms were caused by a neurological or muscular disease but thought she might possibly have tendinitis.

The administrative law judge found Downes to be 75% permanently and partially disabled. The director of workers' compensation affirmed the award. The district court also found Downes to have suffered a 75% permanent partial disability. IBP appeals, raising three issues for review.

I. IBP first argues that the district court should have found that Downes suffered a scheduled injury rather than general bodily disability. Ordinarily, compensation for the loss of the use of a hand is awarded under K.S.A. 44-510d which provides a schedule of compensation for certain injuries. In *Honn v. Elliott*, 132 Kan. 454, 295 Pac. 719 (1931), however, the court held that this schedule is not to be used when a worker has suffered injury to both extremities. The decision partially rests on what is now K.S.A. 44-510c(a)(2), which allows compensation for permanent total disability when a worker loses the *total* use of both eyes, both hands, both arms, both feet, or both legs. *Honn* applied this same rule, by analogy, to *partial* disability in parallel extremities. Therefore, once it is determined that *both* hands are partially disabled, *Honn* removes that disability from the schedule of 44-510d and allows the worker to be compensated for a permanent partial general disability to the body as a whole under K.S.A. 44-510e. See *Hardman v. City of Iola*, 219 Kan. 840, 844, 549 P.2d 1013 (1976).

IBP's first request is that this court overrule *Honn* and *Hardman*. Because those decisions were rendered by the Supreme Court, however, this court is powerless to grant IBP's request. *Stratton v. Garvey Internat'l, Inc.*, 9 Kan. App. 2d 254, Syl. ¶ 6, 676 P.2d 1289 (1984).

IBP next argues that the present case is distinguishable from *Honn* as it involves cumulative (and perhaps alternate) repetitive use injuries to the hands rather than a single traumatic accident

to both hands at once. In our view, such a fact, even if true, is of no consequence. Three time-honored rules compel this result:

1. As early as 1919 a compensable "accident," as understood in workers' compensation law, was defined to include a situation where the physical structure of the worker gives way under the stress of usual labor. *Gilliland v. Cement Co.*, 104 Kan. 771, 777, 180 Pac. 793 (1919).

2. In 1949 the court stated, "[i]f injury occurring as the result of a single accident is compensable, surely we will not declare that injury resulting from a dozen or more of the same or similar accidents, all occurring in the course of the employment, is noncompensable." *Winkelman v. Boeing Airplane Co.*, 166 Kan. 503, 508, 203 P.2d 171 (1949). See also *Demars v. Rickel Manufacturing Corporation*, 223 Kan. 374, 573 P.2d 1036 (1978).

3. As previously observed, since 1931, when two hands or feet are injured, compensation is not figured under the schedule in 44-510d, but as a percentage of disability of the body as a whole. *Honn v. Elliott*, 132 Kan. 454; *Hardman v. City of Iola*, 219 Kan. 840.

Applying these rules to the case at bar, we conclude that Downes suffered a *Winkelman* "injury" to both hands, causing a *Gilliland* structural collapse which entitled her to a *Honn* compensable *bodily* disability payment.

II. IBP next argues that the trial court's finding of injury is not supported by substantial competent evidence, and that the trial court ignored undisputed evidence. In this connection IBP claims that the nerve conduction tests performed by Dr. Mills constituted the only factual evidence presented to the court concerning the existence and extent of Downes' injuries and that these tests negate injury. While it is true that Dr. Mills was the only doctor to testify that his tests were accurate in confirming diagnoses of carpal tunnel syndrome, he also stated that these tests have no value in determining whether a person has tenosynovitis and have little value in diagnosing thoracic outlet syndrome, which Downes was diagnosed as having. Mills further testified that the second nerve conduction test showed some abnormalities which might have resulted from Downes' normal condition of having extremely cold hands. Both doctors who believed Downes to have carpal tunnel syndrome had seen the results of the tests in question. On this record we conclude that

IBP has failed to show that the district court ignored uncontroverted evidence or that the finding of injury to both hands was not supported by substantial competent evidence.

III. IBP finally argues that even if the record is sufficient to show *some* injury, it is not sufficient to show that Downes suffered a *75 percent* permanent partial disability. Dr. Prostic testified that Downes had suffered a 100% work disability as she could not return to her job even if her carpal tunnel syndrome responded to treatment. This evidence alone is sufficient to justify a finding that Downes had suffered a 75% permanent partial disability.

Affirmed.