No. 57,752

DEAN O. HOUSTON, *Appellant*, v. KANSAS HIGHWAY PATROL and STATE SELF-INSURANCE FUND and WORKERS' COMPENSATION FUND, *Appellees*.

(708 P.2d 533)

Opinion filed October 25, 1985.

*Gary R. Terrill*, of McCullough, Wareheim & LaBunker, of Topeka, argued the cause, and *George E. McCullough*, of the same firm, was on the brief for appellant.

*Randall J. Forbes*, of Frieden & Forbes, of Topeka, argued the cause and was on the brief for appellees Kansas Highway Patrol and State Self-Insurance Fund.

*James G. Keller*, of Davis, Unrein, Hummer & McCallister, of Topeka, argued

the cause, and *Michael J. Unrein*, of the same firm, was with him on the brief for appellee Workers' Compensation Fund.

The opinion of the court was delivered by

McFARLAND, J.: This appeal arises out of a workers' compensation claim made by Dean O. Houston against his employer, the Kansas Highway Patrol. The award of the administrative law judge was upheld by the Workers' Compensation Director. On appeal the district court affirmed in part, reversed in part, and remanded in part. The matter is before us on appeal therefrom by the claimant.

The factual background is not in serious dispute. Claimant has been a Kansas highway patrolman since 1957. At the time he was injured, claimant was a sergeant in the patrol's traffic safety and training division. The incident giving rise to the claim occurred in the following manner. On May 6, 1979 (place and time not provided), claimant was standing by the right front fender of his patrol car writing a speeding ticket. While he was so occupied, the rear of his patrol car was struck by another vehicle. The impact threw claimant over his patrol vehicle and he landed on his right side. Claimant was taken by ambulance to the emergency room of Stormont-Vail Hospital in Topeka. He was examined by Dr. Sutton, an orthopedic surgeon, given some medication and sent home.

In the line of duty, claimant had, on two previous occasions, received injuries from motor vehicle accidents. The 1964 injuries resulted in spinal fusion surgery being performed. The 1972 injuries included multiple fractures to the right arm and a fractured cheekbone. In 1977, claimant's right arm was again injured in an altercation with some demonstrators.

Claimant has been a patient of Dr. R. L. Wilson, a chiropractor, since 1976. On May 16, 1979, ten days after the collision involved herein, claimant was seen by Dr. Wilson (last prior contact had been approximately one year earlier). Claimant was having pain in the pelvic area, left leg, neck and spine. Dr. Wilson started treatment of the multiple symptoms. In November, 1979, Dr. Wilson referred claimant to Dr. Joseph Shaw, an orthopedic surgeon, as the chiropractor was not satisfied with the results obtained by his treatment of the lumbar pain. Dr. Shaw surgically removed a cold abscess in the dura of the L 4-5 vertebrae. Claimant's symptoms improved, but he still experi-

enced pain. Additional facts will be stated as needed for discussion of particular issues.

For his first issue claimant contends the district court erred, as a matter of law, in finding claimant had only a 25% permanent partial disability.

The applicable standard of appellate review was stated in *Dieter v. Lawrence Paper Co.*, 237 Kan. 139, 697 P.2d 1300 (1985), as follows:

"This court has held many times that if, when viewed in the light most favorable to the party prevailing below, there is substantial evidence to support the district court's factual findings, this Court is bound by those findings and has no power to weigh the evidence or reverse the judgment of the trial court. Although this Court may feel the weight of the evidence as a whole is against the findings of fact made by the district court, it may not disturb those findings if they are supported by substantial competent evidence." 237 Kan. at 145.

The rules for determining permanent partial disability were stated in *Ploutz v. Ell-Kan Co.*, 234 Kan. 953, 676 P.2d 753 (1984), as follows:

"The test for determining permanent partial general disability is the extent to which the injured worker's ability has been impaired to engage in work of the same type and character he or she was performing at the time of the injury."

"In considering a permanent partial general disability under K.S.A. 44-510e, the work disability would be measured by the reduction, expressed as a percentage, in the worker's ability to engage in work of the same type and character that he or she was performing at the time of the injury."

"Where a claimant in a workers' compensation case is found to suffer a permanent partial general disability, the pivotal question is, what portion of claimant's job requirements is he or she unable to perform because of the injury?" Syl. ¶¶ 3, 4, 5.

Claimant contends his ability to engage in work of the same type and character has been reduced "at least 50%." Claimant testified he felt he could no longer take part in manhunt activities or handle himself well in physical encounters with law violators. There was medical testimony claimant should not drive for more than an hour or so without stopping and walking around for a short time, and that he would have difficulty with stooping, lifting and walking long distances on uneven terrain. Claimant's supervisor testified claimant could no longer participate in self-defense training, engage in manhunt activities or pursuit driving. These activities, in the supervisor's estimation, amounted to 5 - 8% of a patrol sergeant's duties.

We conclude the 25% permanent partial disability determina-

tion of the trial court is supported by substantial evidence and, accordingly, cannot be disturbed. The administrative law judge and the Workers' Compensation Director had likewise found claimant had suffered a 25% permanent partial disability.

For his second issue claimant contends the district court misconstrued and misapplied K.S.A. 44-504, the workers' compensation subrogation statute.

K.S.A. 44-504 provides:

"(a) When the injury or death for which compensation is payable under the workmen's compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the injured workman, his dependents or personal representatives shall have the right to take compensation under the workmen's compensation act and pursue his or their remedy by proper action in a court of competent jurisdiction against such other person.

"(b) *In the event of recovery from such other person by the injured workman* or the dependents or personal representatives of a deceased employee *by* judgment, *settlement* or otherwise, *the employer shall be subrogated to the extent of the compensation and medical aid provided by him to the date of such recovery and shall have a lien therefor against such recovery* and the employer may intervene in any action to protect and enforce such lien . . . ." (Emphasis supplied.)

Claimant, without counsel, entered into a settlement with the motorist who had struck his vehicle. Under the settlement, claimant received a lump sum of $40,000. The settlement did not specify the particular elements of damage included therein.

Without burdening this opinion with the components of the award, as they are not germane to this issue, the bottom line is that the total award and the settlement, essentially, cancel each other out. Claimant contends that he should be permitted to take certain personal losses not compensable under workers' compensation off the top of the settlement, leaving the balance subject to subrogation. These items are losses of sick pay, of certain holiday pay, and of personal property, all attributable to the collision. The total of these items of noncompensable loss is $2,273.62.

Claimant correctly points out that when a workers' compensation statute is subject to more than one interpretation, it must be construed in favor of the worker if such construction is compatible with legislative intent (*Nordstrom v. City of Topeka*, 228 Kan. 336, 613 P.2d 1371 [1980]). The applicable language in K.S.A. 44-504 is clear and unambiguous—and not capable of two

interpretations. The statute unequivocally states "in the event of recovery from such other person . . . by . . . settlement . . . the employer shall be subrogated to the extent of the compensation and medical aid . . . ." These circumstances are present and the employer has been granted subrogation rights for the amount of the award. Had the settlement documents clearly stated a certain amount was specifically for these personal noncompensable losses and had such amount been supportable in fact (as opposed to an effort to circumvent the operation of the statute), a much stronger argument in support of claimant's position could have been made. Such is not the situation before us. We conclude the trial court did not err in denying claimant the right to take his claimed personal losses off the top of the settlement.

For his third issue claimant contends the trial court erred in remanding part of the case to the administrative judge for clarification.

The trial court was concerned about whether certain medical expenses (totalling $544.86) which the administrative law judge held were compensable under the Act were intended to be subject to the employer's right of subrogation. As a part of its decision herein, the trial court ordered part of the case remanded for clarification.

The parties agree that the trial court erred in remanding part of the case for clarification. This position is substantiated both by the statute and the case law.

The jurisdiction of the district court on appeal is set out in K.S.A. 44-556(b), which states:

"On any such appeal the district court shall have jurisdiction to grant or refuse compensation, or to increase or diminish any award of the director as justice may require."

Thus, the explicit language of the statute authorizing appeals does not allow for remanding on its face, and the case law interprets it as not to allow remanding. In *Kuhn v. Grant County*, 201 Kan. 163, 167, 439 P.2d 155 (1968), the court said:

"We think by now it should be generally understood that on an appeal from the director's award in a compensation case, the district court is without authority to remand the proceedings to the director for the hearing of further evidence, or for taking additional action."

And in *Fleming v. National Cash Register Co.*, 188 Kan. 571, 574, 363 P.2d 432 (1961), the court stated:

"It is the settled rule in this jurisdiction that under the provisions of the workmen's compensation act the district court has no authority to remand a case to the commissioner for further proceedings after an award has once been made. It is within the province of the district court to review a case upon receipt of a transcript from the compensation commissioner and to grant or refuse compensation, or to modify the award in accordance with its determination of the questions of fact and law."

Further cases making this same point are *Willis v. Skelly Oil Co.*, 135 Kan. 543, 544, 11 P.2d 980 (1932); and *Fougnie v. Wilbert & Schreeb Coal Co.*, 130 Kan. 410, 286 Pac. 396 (1930).

Clearly, the trial court lacked authority for the remand ordered herein.

The final two issues pertain to the services of Dr. Wilson, the chiropractor.

The first of these two points is whether the proper allowance to Wilson as an *unauthorized* physician under K.S.A. 44-510(c) was $350.00, as held by the trial court, or $150.00, as held by the administrative law judge. It is uncontroverted that the form of the statute, in effect at the time, permitted a maximum of $150.00 for the services of an unauthorized physician. Accordingly, the allowance of $350.00 by the trial court was erroneous (the employer had previously paid the correct $150.00 figure for such services, and the same was recognized in the award of the administrative law judge).

The second matter relating to Dr. Wilson is, from the amount of space devoted to it in the briefs, of great significance to the parties. It is difficult, however, to understand why it occupied such a position of importance and why it is being fought on the particular terrain selected. It concerns Dr. Wilson's status as an authorized physician under K.S.A. 44-510(c). There is no claim that the fact Dr. Wilson is a chiropractor alters the effect of the statute.

To place the issue in perspective, K.S.A. 1978 Supp. 44-510 needs to be set forth as follows:

"**Medical compensation; powers of director.** Except as otherwise provided in this act, medical compensation under the workmen's compensation act shall be as follows: (a) It *shall be the duty of the employer to provide the services of a physician*, and such medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies, ambulance, crutches, and apparatus, and transportation to and from the home of the injured workman to a place outside the community in which he or she resides as may be reasonably

necessary to cure and relieve the workman from the effects of the injury. All fees and charges under this section shall be fair and reasonable, and shall be subject to regulations by the director, and shall be limited to such as are fair and reasonable. The director shall have jurisdiction to hear and determine all disputes as to such charges.

"(b) Any physician, nurse, medical supply establishment, surgical supply establishment, ambulance service or hospital who accept the terms of the workmen's compensation act by providing services or material thereunder shall be bound by the fees approved by the director and no injured employee or dependent of a deceased employee shall be liable for any charges above said amounts approved by the director. *If the employer has knowledge of the injury and refuses or neglects to reasonably provide the benefits herein required, the employee may provide the same for himself or herself, and the employer shall be liable for such expenses* subject to the regulations adopted by the director.

"(c) *If the services of the physician furnished as above provided are not satisfactory to the injured workman the director may authorize the appointment of some other physician* subject to the limitations set forth in this section and the regulations adopted by the director. *If the services of a physician furnished as above provided are not satisfactory to the injured workman, said workman may, without the approval of the director, consult another physician of his or her own choice, and the employer shall pay the fees and charges therefor. If such fees and charges are for examination, diagnosis, or treatment, such fees and charges shall not exceed a total amount of one hundred fifty dollars ($150)."* (Emphasis supplied.)

Except for the increase in the fee provided for in (c) to $350.00, K.S.A. 44-510(a), (b) and (c) is comparable to the 1978 form of the statute. In reviewing the statute, we see that section (a) places a duty on the employer to provide a physician for the injured worker. Section (b) lets the injured worker select his own physician if the employer neglects or refuses to do so after notice of the injury. Section (c) permits the injured worker to have a different physician appointed by the director if the worker is dissatisfied with the physician provided by the employer in (a). Further, if the worker is dissatisfied with the new physician appointed by the director, he may select his own, but the employer is not liable for more than $150.00 for the services of such unauthorized physician.

The parties argue vigorously as to their respective positions of whether or not Dr. Wilson is or is not an authorized physician—citing conflicting testimony as to whether the emergency room physician referred the patient to Dr. Shaw, whether Dr. Wilson made the referral or whether they both did. We do not find this controversy germane. The patient was taken to the emergency room after having been struck by an automobile. He was sent

home with some medication. He continued to have pain and went to see his chiropractor who treated various parts of his body for injuries sustained in the accident. When the patient's back did not improve, the chiropractor suggested he see Dr. Shaw, who performed surgery. There is no evidence that the employer "provided" the emergency room physician as contemplated by K.S.A. 44-510(a). The claimant was seen on an emergency basis after being taken to the hospital by ambulance. When he did not improve, he visited the chiropractor who had previously treated him for other muscular and skeletal problems—a perfectly natural course of action under the circumstances, and contemplated by K.S.A. 44-510(b). The employer had not *provided* a physician, so the worker obtained his own. This was not a situation where the worker was dissatisfied with the physician provided by his employer, requested a change through the director, became dissatisfied with the new physician and selected his own (as contemplated by K.S.A. 44-510[c]).

No one contends the services of Dr. Wilson were duplicative of medical services provided by the employer, or that they were unnecessary or that the charges thereon were excessive. We conclude the charges of Dr. Wilson are compensable under K.S.A. 44-510(b). The employer has paid $150.00 of those charges and is responsible for the balance of $334.00. The award should be increased by this amount.

The judgment is affirmed as modified.

LOCKETT, J., concurring and dissenting: I cannot agree with the majority's determination that the district court correctly construed K.S.A. 44-504.

The district court stated in its memorandum decision and order:

"K.S.A. 44-504(b) provides in substance that whenever an injured worker covered by Workers' Compensation recovers a judgment or settlement from a third party, the employer shall be subrogated to the extent of the compensation and medical aid provided and that the amount of such judgment or settlement shall be credited against future payments of compensation. The statute does not appear to be ambiguous. Its use of the word 'shall' indicates that the subrogated Workers' Compensation benefits would have priority over any other expenses incurred by the claimant when a recovery has been made from a negligent third party. The claimant's contention that he is entitled to offset some $2,273.62 for lost pay and destroyed personal property which were not covered by Workers' Compensation does not appear to be meritorious. The statutes provide no

exception for other damages sustained by the claimant to be deducted prior to the subrogation of Workers' Compensation benefits. It appears that Workers' Compensation benefits have priority over any other damages in determining the amount of the settlement or judgment which is subject to subrogation."

Under this interpretation, an employer is entitled to recover all compensation the employer has paid under the Workmen's Compensation Act from a judgment or settlement its worker obtained from a third party, including that portion of the judgment or settlement not compensable under the Act. The trial court makes no distinction between a general or a specific judgment or settlement.

What happens under the following circumstances?

(1) While driving his own automobile on the job, an employee is involved in a two-car accident with a third party who is totally at fault.

(2) Under the Act, the employer pays $10,000 compensation to its employee. The employer is reimbursable under K.S.A. 44-504(b).

(3) The employee has an insurance policy which contains a $500 deductible provision. The insurance carrier pays $5000 to repair the damages to the employee's car.

(4) The employee sues the third party for all damages he has suffered because of the third party's negligence. At trial the jury returns a general verdict in the amount of $11,000.

Under the majority's decision the employer would be entitled to receive $10,000 reimbursement under the Act. The insurance company would be entitled to only $1,000 because the Act requires that the employer be fully reimbursed. The employee would not be compensated for the $500 he paid to have his car repaired.

Under the same facts, what if the jury had returned a specific verdict which provided for the following:

(1) $5,000 for personal injuries and loss of wages;

(2) $5,000 for damage to the automobile?

Here the district court would award the total $10,000 to the employer as reimbursement under the Act. Neither the insurance carrier nor the injured worker would be entitled to any reimbursement or compensation for their losses.

The purpose of K.S.A. 44-504 is to insure that the injured worker does not receive a double recovery. The employer should be reimbursed only from that portion of a settlement or judgment

that would be compensable under the Act. That is the intent of the legislature.

I would remand the case back to the district court for it to determine the specifics of the settlement entered into between the worker and the third party.

PRAGER and HERD, JJ., join in the foregoing concurring and dissenting opinion.