No. 58,714 ·

GEORGIA MURPHY, *Appellee,* v. IBP, INC., *Appellant.*
(727 P.2d 468)

 Opinion filed October 31, 1986. 

*Wendell F. Cowan, Jr.,* of Cowan, Jarboe & Korte, of Topeka, argued the cause, and *Michael W. Merriam,* of Colmery, McClure, Letourneau, Merriam & Stauffer, P.A., of Topeka, was on the brief for appellant.

*Michael T. Harris,* of Harris & Heath, of Wichita, argued the cause and was on the brief for appellee.

*Kelly W. Johnston,* of Johnston & Johnston, P.A., of Wichita, was on the brief for *amicus curiae,* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

HERD, J.: This is a workers' compensation case where respondent, Iowa Beef Processors, Inc., (IBP) appeals from the district court's order awarding claimant, Georgia Murphy, compensation pursuant to K.S.A. 44-510e.

The facts are as follows:

Georgia Murphy began working for IBP as a brisket trimmer on March 30, 1981. Her job required her to pull a twenty to twenty-five pound piece of semi-frozen meat off the line with a hook in her left hand, and then trim the meat down to fifteen to twenty pounds with a knife in her right hand. After the meat was trimmed, Murphy flipped it over and pushed it back onto the line with her right hand. She testified she handled a new piece of meat approximately every eighteen seconds for eight hours a day

and that the trimming procedure required her to constantly twist and rotate her hands.

In June or July of 1982, Murphy began experiencing difficulty with her hands becoming numb while she was on the job. She took some personal medical leave and the problem subsided. However, in November or December of 1982 she again began experiencing problems with her hands. She would occasionally drop her knife while working.

At first, the problems were primarily with Murphy's right hand, wrist, and shoulder. As the problems worsened, she also began experiencing difficulty with her left hand, including muscle spasms and an inability to move her fingers. She sought treatment from the first-aid nurse at IBP, but continued working for a week after seeing the nurse. The nurse suggested she see Dr. Mills in Topeka, who in turn referred her to a Dr. Campbell. Dr. Campbell sent her to a Wichita physician, Dr. John Toohey, who recommended she undergo surgery for carpal tunnel syndrome.

Dr. Toohey performed carpal tunnel surgery on Murphy's right arm in January of 1983, and on her left arm in March of 1983. In July of 1983, Murphy received a doctor's release to return to work on a limited basis. However, when she returned, she was informed by IBP's safety manager that there were no jobs at IBP that did not require work with wrist flexion or a tight grip. Consequently, Murphy quit her job with IBP.

Murphy testified that up to the time of the hearing, she was still having difficulty with pain, numbness, and swelling in her wrists and shoulders. Moreover, after leaving IBP, she moved to South Carolina with her husband, where she has been unable to find employment.

After a hearing, the administrative law judge determined Murphy's injuries were compensable as scheduled injuries under K.S.A. 44-510d and found she suffered from a 10% permanent partial disability to each forearm. Upon review, the director of workers' compensation rejected this award and instead found claimant suffered from a 75% permanent partial general disability arising from work-related injuries to both forearms. The director further held that claimant should be compensated based upon a percentage of disability to the body as a whole, relying on *Downes v. IBP, Inc.*, 10 Kan. App. 2d 39, 691 P.2d 42, *rev. denied*

236 Kan. 875 (1984). The district court adopted the director's findings and conclusions and affirmed the director's award. IBP appeals.

IBP first challenges the district court's application of *Downes v. IBP, Inc.*, 10 Kan. App. 2d 39, to the facts of the instant case. IBP argues the facts of *Downes* can be distinguished from those in the case at bar, but, if found to be applicable, should be overruled.

The facts in *Downes* are nearly identical to those in the present case. There, the claimant, Linda Downes, began to experience pain through her lower arms and wrists and into her palms after working for nearly two years as a trimmer on the respondent IBP's arm and brisket lines. She was diagnosed as suffering from carpal tunnel syndrome. The administrative law judge found Downes to have suffered a 75% permanent partial disability. The director affirmed, as did the district court.

On appeal, IBP contended Downes suffered a scheduled injury, which is compensable under K.S.A. 44-510d, as opposed to a permanent partial general disability to the body as a whole, compensable under K.S.A. 44-510e. The Court of Appeals affirmed the district court and held that partial disability arising from work-related injuries to both hands is compensable as a percentage of disability to the body as a whole. 10 Kan. App. 2d at 40-41. In so holding, the court relied primarily upon *Honn v. Elliott*, 132 Kan. 454, 295 Pac. 719 (1931). In *Honn*, a workman sustained a compensable injury to both his feet. This court held that when a worker suffers partial disability in both feet the compensation should not be computed for each foot separately, but, rather, under the statute providing for compensation for the loss of injury for both feet. The court reached this conclusion by examining the language of a statute, which, though not directly applicable, was highly relevant. Specifically, the court considered R.S. 1923, 44-510(3)(c) (1930 Supp.) [now K.S.A. 44-510c(a)(2)], which provided for compensation for permanent total disability when a worker lost the total use of both arms, feet, or legs. Thus, under *Honn*, when both hands, arms, feet, or legs are partially disabled, the disability is no longer a scheduled injury under K.S.A. 44-510d, but instead is classified as a permanent partial general disability to the body as a whole under K.S.A. 44-510e.

IBP contends the *Honn* rule is inapplicable in the present case because the injuries to claimant's hands did not occur simultaneously as did the injuries to the claimants in *Honn* and *Downes.*

In determining that the *Honn* rule was applicable to the present case, the director reasoned as follows:

"Although the symptoms of injury in each arm manifested at different times, claimant suffered *simultaneous insult* to her hands, wrists and arms during her period of employment with respondent. She definitely suffered simultaneous aggravation of her symptomatic bilateral carpal tunnel syndrome in November and December, 1982, which forced her to quit work and seek surgical repair for both arms. Following *Downes,* claimant suffers permanent partial disability arising from work-related injuries to both forearms and should be compensated based on a percentage of disability to the body as a whole." (Emphasis added.)

IBP argues that in order for the *Honn* rule to be applicable, claimant must have suffered a work-related accident which resulted in simultaneous injury to parallel extremities, as opposed to a simultaneous period of aggravation which resulted in the same injury to both extremities.

There is no support for IBP's contention. In *Downes,* the claimant had been employed as a trimmer for two years when she began to experience pain in her arms and wrists. Thus, it is clear that the injuries in each arm occurred over an extended period of time, rather than simultaneously.

The Court of Appeals determined in *Downes* that repetitive use injuries to the hands rather than a single traumatic accident to both hands do not make the *Honn* rule inapplicable. The court reasoned as follows:

"1. As early as 1919 a compensable 'accident,' as understood in workers' compensation law, was defined to include a situation where the physical structure of the worker gives way under the stress of usual labor. *Gilliland v. Cement Co.,* 104 Kan. 771, 777, 180 Pac. 793 (1919).

"2. In 1949 the court stated, '[i]f injury occurring as the result of a single accident is compensable, surely we will not declare that injury resulting from a dozen or more of the same or similar accidents, all occurring in the course of the employment, is noncompensable.' *Winkelman v. Boeing Airplane Co.,* 166 Kan. 503, 508, 203 P.2d 171 (1949). See also *Demars v. Rickel Manufacturing Corporation,* 223 Kan. 374, 573 P.2d 1036 (1978)." *Downes v. IBP, Inc.,* 10 Kan. App. 2d at 41.

We think the Court of Appeals' reasoning is sound and it is hereby adopted by this court. Moreover, as pointed out by the director, the *aggravation* to claimant's arms and hands was simultaneous, even though the injuries did not *manifest* them-

selves simultaneously. As additional support for its argument that K.S.A. 44-510e does not apply, IBP places significance on the fact that both of Murphy's arms were not operated on in the same operation. IBP's reasoning is not sound. It is logical to operate on hands and arms separately to leave the patient the capability of one hand for caring for himself or herself.

We hold that where a claimant's hands and arms are simultaneously aggravated, resulting in work-related injuries to both hands and arms, the injury is compensable as a percentage of disability to the body as a whole under K.S.A. 44-510e.

IBP next challenges the district court's award of unauthorized medical expenses for the payment of a physician's bill on behalf of the claimant pursuant to K.S.A. 44-510(c). The facts relevant to this issue are as follows:

Murphy was directed by IBP to receive authorized medical care pursuant to K.S.A. 44-510(a) from Drs. Campbell, Mills, Toohey, and Walters. On February 23, 1984, Dr. Ernest Schlachter examined Murphy at the request of her attorney. At that time, Dr. Schlachter received from Murphy her relevant medical history, and her present complaints and symptoms, conducted a physical examination, and rendered a diagnosis. In addition, Dr. Schlachter gave a recommendation with respect to Murphy's future employment activities and stated his opinion as to permanent impairment of function. The cost of his examination was $100.

The district court found that the examination by Dr. Schlachter was unauthorized medical treatment as defined by K.S.A. 44-510(c) and ordered IBP to pay Dr. Schlacter's bill of $100 on claimant's behalf.

IBP now contends Murphy has not established her right to unauthorized medical reimbursement pursuant to K.S.A. 44-510. That statute provides in pertinent part:

"Except as otherwise provided in this act, medical compensation under the workmen's compensation act shall be as follows: (a) It shall be the duty of the employer to provide the services of a physician, and such medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies, ambulance, crutches, and apparatus, and transportation to and from the home of the injured employee to a place outside the community in which such employee resides, and within such community if the director in the director's discretion so orders, as may be reasonably necessary to cure and relieve the employee from the effects of the injury. . . .

"(b) Any physician, nurse, medical supply establishment, surgical supply

establishment, ambulance service or hospital who accept the terms of the workmen's compensation act by providing services or material thereunder shall be bound by the fees approved by the director and no injured employee or dependent of a deceased employee shall be liable for any charges above the amounts approved by the director. If the employer has knowledge of the injury and refuses or neglects to reasonably provide the benefits herein required, the employee may provide the same for such employee, and the employer shall be liable for such expenses subject to the regulations adopted by the director.

"(c) If the services of the physician furnished as above provided are not satisfactory to the injured employee, the director may authorize the appointment of some other physician subject to the limitations set forth in this section and the regulations adopted by the director. If the services of a physician furnished as above provided are not satisfactory to the injured employee, such employee may consult, without the approval of the director, another physician of the employee's own choice, and the employer shall pay the fees and charges therefor. If such fees and charges are for examination, diagnosis, or treatment, such fees and charges shall not exceed a total amount of $350." (Emphasis added.)

In support of its contention that claimant was not entitled to unauthorized medical expenses under K.S.A. 44-510, IBP cites our recent decision in *Houston v. Kansas Highway Patrol*, 238 Kan. 192, 708 P.2d 533 (1985).

The claimant in *Houston* was a highway patrolman who was struck by an automobile while writing a speeding ticket. He was taken to the emergency room and later released. When he continued to experience pain, he visited his chiropractor, Dr. Wilson. Dr. Wilson treated him and referred him to Dr. Shaw, who performed surgery. The district court determined Wilson was an unauthorized physician under K.S.A. 1978 Supp. 44-510(c). (Except for the increase in the fee provided for in (c) to $350.00 K.S.A. 44-510[a], [b], and [c] is comparable to the 1978 form of the statute.) The respondent disagreed. The majority of this court interpreted K.S.A. 44-510(a), (b), and (c) as follows:

"In reviewing the statute, we see that section (a) places a duty on the employer to provide a physician for the injured worker. Section (b) lets the injured worker select his own physician if the employer neglects or refuses to do so after notice of the injury. Section (c) permits the injured worker to have a different physician appointed by the director if the worker is dissatisfied with the physician provided by the employer in (a). Further, if the worker is dissatisfied with the new physician appointed by the director, he may select his own, but the employer is not liable for more than $150.00 [now $350.00] for the services of such unauthorized physician." 238 Kan. at 198.

Applying this interpretation, we held in *Houston* that the charges of Dr. Wilson were compensable under K.S.A. 44-510(b) rather than K.S.A. 44-510(c). We reasoned that the employer had

not provided a physician (as provided for under K.S.A. 44-510[a]), so the worker obtained his own physician, as contemplated by 44-510(b). We further noted that this was not a situation where the worker was dissatisfied with the physician provided by his employer, requested a change through the director, became dissatisfied with the new physician, and selected his own physician (as contemplated by K.S.A. 44-510[c]).

If we follow our holding in *Houston* in the present case, we would overrule the district court and hold that the examination of Murphy by Dr. Schlachter was not an unauthorized medical treatment as defined by K.S.A. 44-510(c) and claimant is not entitled to an award for unauthorized medical expenses. This result is required since, according to *Houston,* if a claimant is dissatisfied with a provided physician, he must first apply for a change of physician, become dissatisfied with the new physician appointed by the director, and then seek another opinion from a physician selected on his own. Obviously, the *Houston* procedure was not followed by the claimant in the present case, and in spite of that the district court awarded claimant unauthorized medical expenses.

It is argued the language in *Houston* is dicta and therefore can be disregarded. We do not agree with that argument. An interpretation of K.S.A. 44-510(c) was necessary for a resolution of the issues in *Houston;* it is therefore a precedent for this case and must be dealt with accordingly. Let us reconsider the rationale of *Houston* set out above. It is argued that K.S.A. 44-510(c) provides a choice if the worker is dissatisfied with the services of the physician provided by the employer under K.S.A. 44-510(a), rather than as we reasoned in *Houston.* The worker may either petition the director for the appointment of some other physician, the total cost to be paid by the employer, or the employee may consult a physician of the employee's choice without approval of the director. If the employee chooses his own physician without approval of the director, the charges are limited to a total of $350. It is further argued that if the statute is interpreted as required in *Houston,* it will result in an overworked administrative system, delay decisions, and add to the expenses incurred by all parties.

A recent article in the Journal of the Kansas Trial Lawyers Association states:

"It is respectfully submitted by this writer that the Supreme Court [in *Houston*] has inadvertently misstated the meaning of K.S.A. 44-510(c). The dicta states that the worker can only select his own physician if he is dissatisfied with a new physician which has been appointed by the Director. A careful reading of the statute leads to the conclusion that the worker is allowed to select his own physician if he is dissatisfied with the physician provided by the employer."

The article continues:

"The key to interpretation of this statute is found in the phrase, 'physician furnished as above provided'. Both of the options in section (c) begin with this phrase. Both phrases and therefore both options, appear to refer to section (a) which requires the employer to furnish the worker with a physician. The effect of the dicta quoted earlier is to require the use of the first option before the second becomes available." Jordan, *Unauthorized Medical: A Changing Concept*, Vol. IX, No. 3, J.K.T.L.A. 8 (1986).

A careful reading of K.S.A. 44-510(c) indicates that both references to "services of a physician furnished as above provided" refer to K.S.A. 44-510(a). Accordingly, we hold that K.S.A. 44-510(c) allows an employee who is dissatisfied with an approved physician either to ask the director to appoint a new physician, or to employ another physician of his or her choice. Any statements in *Houston* inconsistent with this opinion are overruled. The district court's award of unauthorized medical expenses to the claimant pursuant to K.S.A. 44-510(c) is affirmed.

IBP next argues that the trial court has systematically denied it due process and equal protection of the law by adopting orders of the workers' compensation director instead of granting a trial de novo on the record. This issue has been raised for the first time on appeal and is not properly before this court. It need not be addressed. We have often held that where constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before the appellate court for review. *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 374, 552 P.2d 885 (1976) (quoting *State v. Estes*, 216 Kan. 382, Syl. ¶ 3, 532 P.2d 1283 [1975]); *Kansas State Board of Healing Arts v. Seasholtz*, 210 Kan. 694, 698, 504 P.2d 576 (1972).

The judgment of the trial court is affirmed.