(93 P.3d 1210)
No. 90,572 ■

TERRI L. CHOWNING, *Claimant/Appellee*, v. CANNON VALLEY WOODWORK, INC., *Respondent/Appellant*, and VIRGINIA SURETY COMPANY c/o CAMBRIDGE INTEGRATED SERVICES GROUP, INC., *Insurance Carrier/Appellant.*

Opinion filed February 27, 2004.

*Jeff S. Bloskey*, of McCormick, Adam & Long, P.A., of Overland Park, for appellants.

*David H. Farris*, of Hammond, Zongker & Ferris, L.L.C., of Wichita, for appellee.

Before GREEN, P.J., MARQUARDT and MALONE, JJ.

MALONE, J.: Cannon Valley Woodwork, Inc. (Cannon Valley) and its insurer, Virginia Surety Company c/o Cambridge Integrated Services Group, Inc., appeal from an award by the Kansas Workers Compensation Board (Board) granting permanent partial general disability benefits to Terri L. Chowning. We affirm.

Chowning worked at Cannon Valley. Her job required repetitive work assembling 4,000 parts per day. On April 6, 2000, Chowning told her supervisor that her wrists and arms hurt. Chowning noticed similar pain in January 2000, or earlier, but now it was worse. She was sent to Dr. Phillip Olsen.

Chowning also suffered an injury at Cannon Valley in 1999, when a cabinet struck her on the left side of her back. Dr. Pedro Murati evaluated those injuries on April 5, 2000. At that time, Chowning complained of pain in her left hand. He examined both hands, diagnosed bilateral carpal tunnel syndrome, assessed a 10% functional impairment rating for each hand, and imposed permanent work restrictions for both hands.

On April 10, 2000, Dr. Olsen noted that Chowning complained of pain in her left wrist. He put it in a splint and told her to return to work using the splint, which she did. He later changed her restriction to no use of her left hand and referred her to Dr. Mark Melhorn, an orthopedic surgeon.

On May 11, 2000, Dr. Melhorn examined Chowning. He released her to work with the restriction of task rotation. Cannon Valley provided an accommodated job at the mill. That work, however, was more demanding on Chowning's hands and arms and increased the pain in her wrists. Cannon Valley ceased business on May 19, 2000. At that time, Chowning was in Kansas City due to a family medical emergency.

At his deposition in 2001, Dr. Melhorn testified his diagnosis was not carpal tunnel syndrome, and Chowning did not complain of pain in her right hand and arm until September 2000. However, his office notes and diagnosis for May 11, 2000, show otherwise. His letter to Chowning in June 2000 recommended a conservative approach for bilateral treatment. In May and June 2000, Dr. Melhorn also wrote letters to Cannon Valley's insurance carrier stating Chowning's work activities caused her injuries.

Dr. Melhorn explained his prior opinions on causation were made before he reviewed Chowning's prior medical records and knew she was pregnant. He now claimed Chowning's pregnancy contributed to her symptoms. He explained upper extremity complaints are common during pregnancy and can continue afterwards. He testified a neck injury can also cause upper extremity complaints. Dr. Melhorn opined Chowning's work activity in April and May 2000 was a temporary aggravation of the preexisting condition that was previously identified by Dr. Murati, and she had no task loss based upon his restriction of task rotation.

On August 17, 2001, Dr. C. Reiff Brown, an orthopedic surgeon, saw Chowning and diagnosed her condition as bilateral carpal tunnel syndrome. He opined her condition was caused by her repetitive upper extremity work activities at Cannon Valley and imposed a restriction of no repetitive flexion or extension in excess of 30 degrees. Based on Dr. Brown's assessments, Chowning had a task loss of 25%.

On January 24, 2001, Dr. Murati reevaluated Chowning. His diagnosis was mild to moderate carpal tunnel syndrome on the right and mild carpal tunnel syndrome on the left. Dr. Murati opined her carpal tunnel syndrome was due to the repetitive nature of her work at Cannon Valley in the April 2000 accident, not the July 1999 accident.

Dr. Murati knew of Chowning's pregnancy and agreed pregnancy can be a factor in carpal tunnel syndrome, but claimed pregnancy rarely caused that syndrome. Rather, cumulative repetitive trauma caused carpal tunnel syndrome in 99% of the cases, and carpal tunnel syndrome tended to progress even after ceasing repetitive work.

Dr. Murati imposed permanent restrictions that were "slightly more stringent" for the right arm than those he imposed previously, but were the same as already imposed for the left arm. Dr. Murati assessed a 15% functional impairment rating for Chowning's right upper extremity and 10% for her left upper extremity, which combined for a 14% whole body impairment rating. Based on Dr. Murati's 2001 restrictions, Chowning had a 27% task loss.

Chowning had limited education and work experience. She documented her job search from May 22, 2000, to August 6, 2001. She made 126 contacts. She applied mostly for positions as secretary and receptionist, as well as cashier, teacher's assistant, turnpike toll worker, and manufacturing worker. To find jobs, she referred to the newspapers in El Dorado and Wichita and the unemployment office; did a computer search; and went to businesses that had not advertised a job. She did not go to an employment agency. At the regular hearing, Chowning was still unemployed.

The administrative law judge (ALJ) found Chowning had sustained an on-the-job injury to her bilateral upper extremities on May 18, 2000, but denied work disability because he determined Chowning's unemployment was the result of Cannon Valley ceasing business and the job market. Chowning filed an application for review with the Board.

The Board found Chowning had suffered upper extremity injuries to both of her hands and arms due to a series of mini-traumas from her repetitive work at Cannon Valley through her last day of work on May 18, 2000, and those injuries were compensable as a permanent partial general disability under K.S.A. 44-510e. It held Chowning had sustained a 26% task loss by averaging the opinions of Drs. Brown and Murati, and a 100% wage loss, resulting in a 63% permanent partial general disability. It also held Chowning was unemployed due to her injuries and had made a good faith effort to find work. Cannon Valley and its insurance carrier, Virginia Surety Company c/o Cambridge Integrated Services Group, Inc., (collectively referred to as Cannon Valley) appeal.

Cannon Valley argues substantial competent evidence does not support the Board's finding that Chowning sustained an accidental injury arising out of and in the course of her employment.

In employment covered by the workers compensation laws, an employer must compensate an employee for personal injury incurred by the employee through "accident arising out of and in the course of employment." K.S.A. 44-501(a). As used in the Workers Compensation Act,

"[t]he phrase 'out of' employment points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. An injury arises 'out of' employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Thus, an injury arises 'out of' employment if it arises out of the nature, conditions, obligations, and incidents of the employment. The phrase 'in the course of' employment relates to the time, place, and circumstances under which the accident occurred and means the injury happened while the worker was at work in the employer's service. [Citations omitted.]" *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 278, 899 P.2d 1058 (1995).

Since 1993, the Board has had authority to review the ALJ's decision for both questions of law and fact. The Board's determination can be appealed to the Court of Appeals, where review is limited to questions of law in accordance with the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, *Griffin v. Dale Willey Pontiac-Cadillac-GMC Truck, Inc.*, 268 Kan. 33, 34-35, 991 P.2d 406 (1999). Whether the Board's findings of fact are supported by substantial competent evidence is a question of law. 268 Kan. at 34.

Substantial evidence in workers compensation cases is evidence that possesses something of substance and relevant consequence and carries with it fitness to induce the conclusion that the award is proper, or furnishes a substantial basis of fact from which the issue raised can be reasonably resolved. The appellate court reviews the evidence in the light most favorable to the prevailing party and does not reweigh the evidence or assess the credibility of the witnesses. *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 191-92, 62 P.3d 236 (2003).

Cannon Valley takes issue with the Board's finding that all three physicians concluded Chowning's work activities either caused or contributed to her bilateral upper extremity injuries. First, it argues the Board placed greater weight on Dr. Melhorn's two letters in

May and June 2000 than on his diagnosis in 2001. Cannon Valley claims the Board disregarded Dr. Melhorn's testimony that clarified his opinion in those letters.

Dr. Melhorn's statements in 2000 were inconsistent with his testimony in 2001. The Board has the authority to weigh these inconsistencies. This court cannot reweigh evidence or reassess the credibility of testimony. Further, Dr. Melhorn did not eliminate Chowning's work activities at Cannon Valley as a contributing factor. Dr. Melhorn testified he still agreed with his letter dated November 20, 2000. It stated Chowning's condition had "a multifactorial etiology" that included "her pregnancy, her previous musculoskeletal symptom complaints and *a contribution from her work activities at Cannon Valley*, at the time of onset of April, 2000." (Emphasis added.)

The record also shows Chowning's symptoms appeared before her pregnancy. Chowning gave birth on November 19, 2000. Chowning noticed the symptoms in January 2000 or earlier. That testimony and the other two physicians' testimony support the Board's findings that Chowning's work activity, not her pregnancy, caused her injuries. Findings that are supported by substantial evidence will be upheld by an appellate court even though evidence in the record would have supported contrary findings. *Foos v. Terminix*, 31 Kan. App. 2d 522, 528, 67 P.3d 173 (2003).

Next, Cannon Valley contends Dr. Brown's opinion on causation did not consider Chowning's pregnancy or her prior injury. According to Cannon Valley, his failure to do so means his opinion lacks substance; thus, the Board erred by accepting it.

Other portions of Dr. Brown's testimony show he knew pregnancy and a neck injury could be factors for carpal tunnel syndrome. Even though he was never asked if those factors changed his opinion, Dr. Brown explained, based upon the work history Chowning gave him, he was satisfied that she had "carpal tunnel syndrome associated with the manipulative work activity that was necessary with her job. . . . [T]he simple fact that she had gradual onset of typical symptoms with manipulative activity [allowed him] to make a diagnosis of carpal tunnel syndrome."

Cannon Valley also contends Dr. Murati's opinion lacks substance because the record shows Chowning attributed her complaints to the 1999 injury, and, thus, his opinion does not support the Board's findings. Cannon Valley relies upon a cross-examination question where Chowning was asked whether, after the 1999 accident, she ever "went without any complaints in [her] upper extremities for a month." She responded negatively.

We note the 1999 accident evaluation shows Chowning also complained of neck pain and headaches. On redirect, Chowning testified the problems with her "hands and arms" developed "sometime after" the 1999 accident. Because Cannon Valley's question did not define "upper extremities," Chowning may have believed the reference to "upper extremities" included her neck and head.

Cannon Valley next asserts Dr. Murati's diagnosis and evaluation in 2000 shows Chowning's condition was caused by the 1999 injury. Cannon Valley also contends Dr. Murati's opinion in 2001 that Chowning's carpal tunnel syndrome resulted from her repetitive job tasks was made without any knowledge of her job tasks at Cannon Valley. As such, it claims his opinion lacks substance and fitness to support the Board's findings.

Dr. Murati specifically stated the 1999 accident did not cause Chowning's condition. He explained he diagnosed and evaluated Chowning's bilateral carpal tunnel syndrome in 2000 because he "was asked to give a permanent impairment of function [for Chowning and he] just evaluated her as a totality and gave an impairment." Dr. Murati also said he assumed Chowning's job tasks were repetitive because she said she did assembly work. On redirect, Dr. Murati was told Chowning testified her work required repetitively assembling cabinetry. He then stated her testimony was consistent with his assumption about the tasks Chowning performed. This evidence shows there was substance and fitness to support Dr. Murati's causation opinion.

Cannon Valley next claims Dr. Murati's two evaluations showed there was no change to Chowning's left upper extremity. According to Cannon Valley, this means either no further injury occurred to her left upper extremity from April 6, 2000, through May 18, 2000,

or any change was temporary and Chowning returned to her prior condition without any permanent changes. Cannon Valley asserts these conclusions are consistent with Dr. Melhorn's opinion.

This argument assumes the 1999 accident or the pregnancy caused Chowning's bilateral upper extremity injuries. Dr. Murati specifically excluded the 1999 accident and rejected pregnancy as the cause for these injuries. Dr. Brown provided similar testimony. The fact that the extent of injury to Chowning's left upper extremity remained unchanged for a period of time does not affect the causation of that injury.

When reviewing the record in a light most favorable to Chowning, substantial competent evidence supports the Board's finding that Chowning's injuries arose out of and in the course of her employment.

Cannon Valley argues substantial competent evidence does not support the Board's finding that Chowning is entitled to compensation for a permanent partial general disability under K.S.A. 44-510e. In a separate issue, it claims two separate injuries occurred and each is compensated as a scheduled injury under K.S.A. 44-510d. If so, the accident date for Chowning's left upper extremity injury is the date of her first on-the-job accident that was previously resolved, or July 15, 1999, and the accident date for her right upper extremity injury is the date of her last day at work, or May 18, 2000.

Our determination of the first issue resolves the second issue. Chowning sustained her burden by proving she suffered an injury to both upper extremities through a series of mini-traumas through her last date of work on May 18, 2000. As such, if substantial competent evidence in the record supports the Board's findings, its decision will be upheld even though evidence would have supported contrary findings. See *Foos*, 31 Kan. App. 2d at 528. Whether the Board's findings are supported by substantial competent evidence is a question of law. See *Griffin*, 268 Kan. at 34.

Cannon Valley contends the Board disregarded undisputed evidence. It relies upon Dr. Murati's report in 2000, Dr. Olson's notes, and Dr. Melhorn's testimony that indicate Chowning complained of pain in only her left hand and wrist in April and May 2000.

Contrary to Cannon Valley's assertion, other evidence showed Chowning had pain in both upper extremities before and during April and May 2000, specifically Chowning's testimony and the documents in Dr. Murati's files. That evidence supports the Board's finding that she sustained repetitive mini-traumas to her hands and wrists through her last day at work. Thus, the Board's finding can be upheld even though other evidence could have supported contrary findings. See *Foos,* 31 Kan. App. 2d at 528.

Cannon Valley next argues the injuries to both upper extremities must manifest themselves simultaneously. This argument was rejected in *Murphy v. IBP, Inc.,* 240 Kan. 141, 144, 727 P.2d 468 (1986).

In *Murphy,* the court adopted the decision in *Downes v. IBP, Inc.,* 10 Kan. App. 2d 39, 40, 691 P.2d 42 (1984), *rev. denied* 236 Kan. 875 (1985), where this court held that when both of a claimant's hands are partially injured, compensation is not computed under the scheduled injuries listed in K.S.A. 44-510d, but as a percentage of permanent partial general disability to the body as a whole under K.S.A. 44-510e. 240 Kan. at 145. It explained that the question was whether "the *aggravation* to claimant's arms and hands was simultaneous, even though the injuries did not *manifest* themselves simultaneously." 240 Kan. at 144-45. This rationale and holding were again applied in *Depew v. NCR Engineering & Manufacturing,* 263 Kan. 15, 26-27, 947 P.2d 1 (1997).

Cannon Valley, however, claims *Pruter v. Larned State Hospital,* 271 Kan. 865, 26 P.3d 666 (2001), supports its position. It relies upon the following language in *Pruter:*

"[S]imultaneous injuries to parallel limbs (*i.e.,* two arms or two legs) would be compensated differently from instances where one limb was injured one day and several days later the other limb was injured. There, the impact of the two injuries in both contexts may be significantly different, but there is no question that the compensation would be different under the Act." 271 Kan. at 873.

The *Pruter* court also discussed *Downes* and *Murphy* and cited *Depew,* as well as other cases, which held the simultaneous aggravation to parallel members allowed for an award of permanent partial disability benefits. The rationale and holdings of those cases

were left intact. 271 Kan. at 871-72. Thus, it is inconsequential that the injuries were not *manifested* simultaneously.

Next, Cannon Valley argues the Board failed to apply *West-Mills v. Dillon Companies, Inc.*, 18 Kan. App. 2d 561, 567, 859 P.2d 382 (1993), where the court held an employer is not liable for permanent partial disability benefits where the permanence of the condition did not result from the work-related injury.

Cannon Valley relies upon Dr. Melhorn's opinion that Chowning suffered only a temporary aggravation of her preexisting condition and Dr. Murati's testimony that the conditions of Chowning's left upper extremity in 2000 and 2001 were the same and no additional restrictions were necessary for her left upper extremity.

As discussed above, there was disputed evidence about the manifestation of Chowning's injuries; further, the controlling factor is the simultaneous aggravation to parallel members, not the simultaneous manifestation. As such, substantial competent evidence supports the Board's findings that Chowning is entitled to permanent partial general disability.

Cannon Valley also argues the Board disregarded undisputed evidence regarding Chowning's preexisting condition of bilateral carpal tunnel syndrome. Chowning claims Cannon Valley never raised this issue at the administrative level, and we agree.

The doctrine of exhaustion of administrative remedies promotes an orderly procedure and requires a party to exhaust the administrative process regarding matters peculiarly within the agency's competence or expertise. *Zarda v. State*, 250 Kan. 364, 367, 826 P.2d 1365, *cert. denied* 504 U.S. 973 (1992). Under this doctrine, a party cannot raise an issue to a court of law that has not been raised at the administrative level unless it falls under K.S.A. 77-617. *U.S.D. No. 500 v. Womack*, 20 Kan. App. 2d 608, 611, 890 P.2d 1233 (1995). We have reviewed K.S.A. 77-617 and determined our court is not authorized to consider this issue.

Cannon Valley next contends the Board incorrectly determined Chowning's wage loss was the result of her work-related injuries. It claims her wage loss was the result of economic decisions that affected all of its workers, which means Chowning was not entitled

to work disability. According to Cannon Valley, the Board erred in its interpretation and application of several cases.

Under K.S.A. 77-621(c)(4), we may grant relief if the Board has erroneously interpreted or applied the law.

Cannon Valley relies upon *Hernandez v. Monfort, Inc.*, 30 Kan. App. 2d 309, 41 P.3d 886, *rev. denied* 274 Kan. 1112 (2002). In *Hernandez*, the claimant's post-injury hourly pay was within 90% of his preinjury hourly pay; however, his overall wages decreased because the employer decreased overtime hours due to its economic situation. The Board and this court held the claimant was not entitled to a work disability. 30 Kan. App. 2d at 311-12.

Here, the Board refused to apply the *Hernandez* case and found it was limited to its facts. The Board relied upon *Cavendar v. PIP Printing, Inc.*, 31 Kan. App. 2d 127, 61 P.3d 101 (2003); *Niesz v. Bill's Dollar Stores*, 26 Kan. App. 2d 737, 993 P.2d 1246 (1999); *Gadberry v. R.L. Polk & Co.*, 25 Kan. App. 2d 800, 975 P.2d 807 (1998); and *Lee v. Boeing Co.*, 21 Kan. App. 2d 365, 899 P.2d 516 (1995). It concluded these cases showed the issue was whether the claimant made a good faith effort to find and retain appropriate employment.

We have reviewed each of these cases and agree that the Board's refusal to apply the *Hernandez* case was correct. In *Hernandez*, the claimant based his work disability upon a decrease of overtime hours in a closed market, *i.e.*, he was competing for overtime hours with his coemployees. In such situations, an employer can rebut the claimant's allegation that a work injury caused a decrease in overtime hours.

Here, Chowning did not base her work disability upon a decrease of overtime hours with the same employer. The rationale in *Lee* and *Niesz* controls. The legislature did not intend "to deprive an employee of work disability benefits after a[n] employer discharges him or her as part of an economic layoff." *Lee*, 21 Kan. App. 2d at 372. A claimant's work restrictions do not cease when his or her job ends; rather, the claimant's work disability makes it difficult for the claimant to obtain work in the open market. See *Niesz*, 26 Kan. App. 2d at 740. Thus, once a claimant has proven

a work disability, the issue becomes whether a good faith effort was made to obtain employment.

Cannon Valley next challenges the Board's finding that Chowning suffered a 26% task loss. It claims the Board should not have rejected Dr. Melhorn's opinion regarding task loss and instead should have viewed all three physicians' opinions equally, resulting in a lower task loss.

The Board rejected Dr. Melhorn's opinion on Chowning's task loss because (1) he did not know whether her former job tasks permitted task rotation and (2) he restricted Chowning only as to task rotation rather than restricting the activities that caused her injuries.

Cannon Valley challenges only the first reason. The Board's other reason for rejecting Dr. Melhorn's opinion remains unchallenged. As such, further consideration is unnecessary.

Cannon Valley makes several challenges to the Board's finding that Chowning made a good faith effort to find employment. First, it claims the record lacks substantial competent evidence to support that finding because the Board should not have utilized Chowning's list of job contacts. Cannon Valley argues the Board found that list "somewhat suspect" and ignored Chowning's testimony about the list.

At the regular hearing on August 8, 2001, Chowning produced a list of her job contacts from May 22, 2000, until August 6, 2001. The Board stated: "Although the list is somewhat suspect as it only shows one contact for each day listed, [Chowning] has established that she has made a good faith effort to find employment." This statement does not indicate the Board found the list itself suspect, but rather questioned why Chowning made only one contact for each day she had listed.

At her deposition in July 2001, Chowning acknowledged a list of her job contacts that she provided earlier covered only December 18, 2000, to April 30, 2001. She also testified that her notes about her job contacts before and after those dates were at home and could be provided. When asked why this list began on December 18, 2000, Chowning did not recall. When later asked when her

unemployment benefits ended, she stated the benefits probably stopped when she started logging her job contacts.

Chowning's testimony is inconsistent. The Board, however, resolved this issue in Chowning's favor. The Board had the authority to weigh such evidence and decide credibility, not this court.

Cannon Valley contends the number of contacts on the list should not determine Chowning's good faith efforts because she mostly went to businesses that had not advertised a job. Arguably, this technique would expand a job search and increase job opportunities. If Cannon Valley is contending Chowning did not respond to all of the advertised job openings that she could have performed, it should have produced rebuttal evidence showing such job advertisements. See K.S.A. 2003 Supp. 44-508(g).

Cannon Valley claims the Board's decision was based on Cannon Valley's inaction, not Chowning's actions.

The Board discussed Chowning's limited job experience, training, and education, as well as her list of job contacts. It then rejected Cannon Valley's argument that Chowning did not make a good faith effort to find employment or that Chowning applied for the wrong type of jobs. The Board found "it incongruous for [Cannon Valley] to argue [Chowning's] job search efforts were inappropriate on one hand but on the other hand never attempt to assist [Chowning] with vocational rehabilitation, job search, or other services."

We interpret this statement as recognition that Chowning's opportunities were even more limited after her injury because she lacked vocational rehabilitation training for a different field of work or other assistance in finding a job within her past job experience, education, and work restrictions. All of these limitations eliminated Chowning from the job pool of qualified applicants for many other types of jobs. Viewed in this light, the Board's finding was based upon Chowning's efforts to find work within her limitations.

As its last argument, Cannon Valley argues the Board arbitrarily disregarded the testimony of Karen Terrill, a rehabilitation consultant, who was the only witness to provide an opinion regarding Chowning's good faith effort to obtain employment.

Whether Chowning made a good faith effort to obtain employment is a finding of fact to be determined by the Board. The Board had the option of choosing Chowning's evidence or Terrill's opinion. In doing so, it weighs evidence and decides credibility. The Board has the authority to do so, not this court. Nevertheless, the record indicates why Terrill's opinion was not adopted.

Terrill's opinion was based upon standards that she had established. She required 5 to 10 contacts per week; Chowning made only 2 to 3 job contacts per week. She admitted the Job Service Center standard for unemployment benefits was two to three contacts per week. Terrill also stated Chowning should have focused most of her job search in Wichita; Chowning resided in El Dorado. Terrill claimed Chowning should have directed her efforts toward a specific field, rather than using a "shotgun" approach.

The Board apparently did not adopt Terrill's personal standard and chose another state agency's standard. Terrill also would have required Chowning to travel or relocate to Wichita, increasing Chowning's costs, which could be a factor in the analysis of finding employment with comparable pay. Further, in a tight labor market, Chowning's "shotgun" approach may be better because it expands her possibilities for employment.

Affirmed.