No. 84,865

Vona R. Pruter, *Appellee*, v. Larned State Hospital, *Appellant*, and State Self-Insurance Fund, *Appellant*.

(26 P.3d 666)

Opinion filed July 13, 2001.

*Richard L. Friedeman*, of Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Chtd., of Great Bend, argued the cause and was on the briefs for appellants.

*Robert R. Lee*, of Wilson, Lee & Gurney, of Wichita, argued the cause and was on the briefs for the appellee.

*Timothy A. Short*, of Spigarelli, McLane & Short, of Pittsburg, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

SIX, J.: This is a workers compensation case dealing with simultaneous injuries. We granted claimant Vona R. Pruter's petition for review of the Court of Appeals' opinion, which reversed the decision of the Workers Compensation Board (Board). See *Pruter v. Larned State Hospital*, 28 Kan. App. 2d 302, 16 P.3d 975 (2000). The Court of Appeals found that simultaneous injuries to Pruter's right arm and right leg should be compensated as two separate scheduled injuries under K.S.A. 44-510d, rather than combined to make a "whole body" disability under K.S.A. 44-510e.

Our jurisdiction is under K.S.A. 20-3018(b), granting the petition for review.

The question is whether Pruter's injuries should be compensated as two scheduled injuries or as a whole body disability. We agree with the two scheduled injuries conclusion reached by the Court of Appeals.

## FACTS

The facts are not in dispute. On March 24, 1998, Vona R. Pruter worked as a mental health aide assigned to a children's ward at Larned State Hospital (Larned). As she and a co-worker were attempting to help a group of children into a building, Pruter fell and broke her right wrist and right ankle. Initially, Pruter's complaints focused on her right wrist. During the course of her hospitalization, she complained of pain in her right ankle. Further investigation showed that her ankle was broken. Dr. Howard Wilcox, Jr., an orthopedic surgeon, operated on Pruter's right wrist. Her right ankle was placed in a cast.

On September 30, 1998, Dr. Wilcox released Pruter from further treatment. He testified that Pruter continued to suffer a "slight dysfunction" in the use of her wrist but had an "excellent range of motion." He noted that Pruter had discomfort when gripping objects. In addition, she had a visible physical deformity in her wrist and could expect to suffer arthritis because of her injuries. Dr. Wilcox assigned a 5% permanent impairment to Pruter's right arm because of her wrist injury. He testified that Pruter had fully re-

covered from the effects of her ankle injury and concluded that she had no loss of function.

Pruter was subsequently examined by Dr. C. Reif Brown, an orthopedic surgeon, at her counsel's request. Dr. Brown testified that the examination revealed mild swelling in the wrist. Dr. Brown noted a decrease in the wrist's range of motion, with occasional snapping. Regarding Pruter's ankle, Dr. Brown's examination revealed mild swelling around the lateral malleolus or outer ankle joint. He also found a decreased range of motion. He restricted Pruter's activities, recommending that she avoid frequent: (1) long walking, (2) stair climbing, (3) squatting, and (4) firm grasping with the right hand.

Dr. Brown assigned a 7% impairment to Pruter's right arm because of lost range of motion, an additional 10% impairment due to weakness, and a 7% impairment to her right leg attributable to the ankle injury.

The administrative law judge (ALJ) found that Pruter sustained a 6% permanent impairment to her "right upper extremity" (4% to the body as a whole) and a 7% permanent impairment to her "right lower extremity" (3% to the body as a whole). The ALJ converted the impairment ratings to a 7% functional impairment to the body as a whole. Larned and the State Self-Insurance Fund appealed to the Board. The Board affirmed the ALJ's award under K.S.A. 44-510e, and that decision was appealed to the Kansas Court of Appeals. The Court of Appeals reversed the Board's decision and found that compensation should have been awarded based upon two separate scheduled injuries under K.S.A. 44-510d. The Court of Appeals remanded the case for a recalculation of the award. Pruter then filed her petition for review.

## DISCUSSION

Pruter contends that simultaneous injuries to her arm and leg should be compensated under the Kansas Workers Compensation Act, K.S.A. 44-501 *et seq.*(Act) as a whole body disability, rather than two separate scheduled injuries.

The Kansas Trial Lawyers Association (KTLA) filed an *amicus curiae* brief urging us to narrowly construe K.S.A. 44-510d, the

scheduled injury statute. KTLA reasons that 44-510d is an exception to the general rule that injuries are to be compensated under the Act based upon the economic impact suffered by the injured worker. We disagree.

The compensation of simultaneous workers compensation injuries involves statutory interpretation, over which we have unlimited review. *Wasson v. United Dominion Industries*, 266 Kan. 1012, 1018, 974 P.2d 578 (1999). While an appellate court gives deference to the Board's interpretation of the law, if such interpretation is applied erroneously, the court may grant relief. *Burton v. Rockwell International*, 266 Kan. 1, 5, 967 P.2d 290 (1998).

The Act imposes upon covered employers an obligation to compensate an injured employee for any "personal injury by accident arising out of and in the course of employment." K.S.A. 44-501(a). K.S.A. 44-510d is a schedule of compensation for certain permanent partial disabilities. The statute says, in part:

"(a) . . . If there is an award of permanent disability as a result of the injury . . . compensation is to be paid for not to exceed the number of weeks allowed in the following schedule:

. . . .

(13) For the loss of an arm, excluding the shoulder joint, shoulder girdle, shoulder musculature or any other shoulder structures, 210 weeks, and for the loss of an arm, including the shoulder joint, shoulder girdle, shoulder musculature or any other shoulder structures, 225 weeks.

. . . .

(15) For the loss of a lower leg, 190 weeks.

. . . .

(21) Permanent loss of the use of a . . . hand, shoulder, arm, forearm . . . leg or lower leg . . . shall be equivalent to the loss thereof.

. . . .

"(b) Whenever the employee is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in K.S.A. 44-510h and 44-510i and amendments thereto, and no additional compensation shall be allowable or payable for any temporary or permanent, partial or total disability . . . ."

K.S.A. 44-510e covers compensation for nonscheduled injuries, or permanent partial general disabilities, and says in part:

"(a) . . . [E]xcept that in case of temporary or permanent partial general disability not covered by such schedule, the employee shall receive weekly compen-

sation as determined in this subsection during such period of temporary or permanent partial general disability not exceeding a maximum of 415 weeks."

Thus, a scheduled injury includes compensation for the complete loss of the scheduled member and the permanent partial loss of the use of the member. K.S.A. 44-510d(a)(21). With scheduled injuries, compensation is based on the schedule rather than on the individual's loss in earning power. *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, 771, 830 P.2d 41 (1992). According to the Kansas Workers Compensation Handbook § 11.01, p. 11-1 (rev. ed. 1990), temporary or permanent partial disabilities due to unscheduled injuries, calculated under K.S.A. 44-510e, typically lead to a larger award.

Here, the Court of Appeals provided a measured analysis of the issue. In reversing the Board's decision, the Court of Appeals observed that the Board relied primarily on *Honn v. Elliott*, 132 Kan. 454, 295 Pac. 719 (1931), and several earlier Board decisions.

A brief review of *Honn* is appropriate. Honn injured both of his feet after a work-related fall. The bones in both feet were crushed, and his impairment was estimated at 45% loss in one foot and 40% loss in the other. Because of these injuries, he was unable to return to work on oil rigs or to do any work requiring him to be on his feet for long periods. The employer argued that the workers compensation benefits should have been calculated based on two scheduled injuries rather than a general body disability.

We emphasized that the statutory schedule of injuries, R.S. 1923, 44-510 (1930 Supp.), referred generally to single injuries. The only exception was the section covering the loss of hearing in both ears. See R.S. 1923, 44-510(3)(c)(17) (1930 Supp.) (now K.S.A. 44-510d[a][19]). See *Honn*, 132 Kan. at 458. We also observed that "[a]t no place in the schedule does it attempt to provide compensation for both members when they are in pairs, as 'both hands,' 'both feet,' 'both eyes.' " 132 Kan. at 458. However, R. S. 1923, 44-510(3)(a) (1930 Supp.) said: "Loss of both eyes, both hands, both arms, both feet or both legs, shall, in the absence of proof to the contrary, constitute a total permanent disability." Construing R.S. 1923, 44-510 (1930 Supp.), we decided that when an

employee injures both feet, the compensation should be determined under the permanent total disability statute and the unscheduled permanent partial disability provision. 132 Kan. at 458.

Here, the Court of Appeals looked beyond *Honn* to later case law. It noted that in *Rogers v. Board of Public Utilities*, 158 Kan. 693, 149 P.2d 632 (1944), Rogers suffered an injury causing two separate and distinct hernias. On appeal from the agency, the district court concluded that Rogers' two hernias, comprising a temporary total disability, were not covered by the schedule (the schedule would apply only if there was one hernia, not two). *Rogers* did not mention *Honn*. We concluded in *Rogers* that the language of G.S. 1935, 44-510(3)(c) (1943 Supp.) limited the recovery of compensation for scheduled injuries to the schedule itself and no additional compensation was proper. 158 Kan. at 695-97. We rejected Rogers' argument that the statutory reference to "a" hernia in the schedule did not apply when a single accident caused two hernias. We cited G.S. 1935, 77-201(3), which said that a singular word may be extended to several persons or things. 158 Kan. at 698. Consequently, we found that Rogers was entitled to recover compensation for both hernias based on scheduled benefits. 158 Kan. at 702.

Simultaneous dual injuries also were considered in *Wammack v. Root Manufacturing Co.*, 184 Kan. 367, 336 P.2d 441 (1959). Wammack permanently injured the thumbs of both hands in the same accident. The district court awarded benefits based on two scheduled injuries; Wammack appealed. We discussed the 1955 version of the Act and compared *Rogers* and *Honn*. In *Wammack*, we noted that *Honn* turned on R.S. 1923, 44-510(3)(a) (1930 Supp.), which made compensation for dual injuries to the feet compensable "on the basis of total disability." However, we observed that 44-510(3)(a) did not discuss the loss of two thumbs. 184 Kan. at 372. We concluded that even with dual injuries sustained in one accident, the schedule applied, and the district court's ruling was affirmed. We acknowledged that circumstances may arise where payment of compensation for dual scheduled injuries might seem unjust, but we concluded that the employee's remedy was to appeal to the legislature, not the courts. 184 Kan. at 373.

In *Hardman v. City of Iola*, 219 Kan. 840, 549 P.2d 1013 (1976), Hardman injured both hands in an accident involving electricity. The district court found that Hardman suffered a permanent total disability and awarded benefits accordingly. On appeal, we found that there was substantial evidence to support the finding that Hardman lost significant enough use of portions of both hands, and these impairments made him incapable of obtaining employment on the open job market. 219 Kan. at 842, 846. The respondent in *Hardman* argued that the 1974 amended language in 44-510c appeared to be a new definition of permanent total disability and contradicted our previous decisions. See L. 1974, ch. 203, § 12. We refused to consider a retroactive application of the amendment. We upheld the application of the presumption relied upon in *Honn* and affirmed the award for permanent total disability. *Hardman*, 219 Kan. at 846.

The Court of Appeals here commented that Pruter failed to address the impact of *Rogers* and *Wammack*, and the *amicus curiae* dismissed the two cases as irrelevant (*Rogers*) or an aberration (*Wammack*). *Pruter*, 28 Kan. App. 2d at 308.

The Court of Appeals then turned to two more recent cases that have seemingly revived the holding in *Honn*. First, in *Downes v. IBP, Inc.*, 10 Kan. App. 2d 39, 691 P.2d 42 (1984), *rev. denied* 236 Kan. 875 (1985), the court upheld an award of permanent *partial* disability benefits based on K.S.A. 44-510e to a worker who had sustained repetitive trauma injuries to both hands and arms. *Downes* extended the *Honn* rule, that simultaneous injuries to parallel members allowed for an award of permanent partial disability benefits, to repetitive injury cases. 10 Kan. App. 2d at 40-41.

In the second case relied on by the Court of Appeals, *Murphy v. IBP, Inc.*, 240 Kan. 141, 727 P.2d 468 (1986), we adopted the *Downes* rationale. Murphy sustained carpel tunnel injuries to both hands and forearms. The Director of Workers Compensation entered a 75% whole body disability award. Relying on *Honn*, we rejected the employer's arguments that the injuries should be compensated under the scheduled injury statute. 240 Kan. at 143-44. Our ruling focused on the simultaneous injury of both of Murphy's hands and arms. 240 Kan. at 145. We found: "[U]nder *Honn*, when

both hands, arms, feet, or legs are partially disabled, the disability is no longer a scheduled injury under K.S.A. 44-510d, but instead is classified as a permanent partial general disability to the body as a whole under K.S.A. 44-510e." 240 Kan. at 143. See *Depew v. NCR Engineering & Manufacturing*, 263 Kan. 15, 27, 947 P.2d 1 (1997) (following *Murphy* and allowing simultaneous aggravation to left and right forearms to be compensated as a percentage of disability to the body as a whole and not as separate scheduled injuries); *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, 771-74, 782, 830 P.2d 41 (1992) (applying the *Honn* rule to repetitive injuries to both upper extremities and finding the statutory provision cutting back on *Honn* in such cases to be unconstitutional); *Rodriguez v. Henkle Drilling & Supply Co.*, 16 Kan. App. 2d 728, 731, 828 P.2d 1335, *rev. denied* 251 Kan. 939 (1992) (noting that both parties acknowledged that the language in K.S.A. 44-510c[a][2] has been extended by case law to allow compensation for partial general disability of the body as a whole under K.S.A. 44-510e).

The Court of Appeals distinguished *Honn* from the facts here, reasoning that the *Honn* rule has been applied only to the loss of use of *parallel* limbs where simultaneous injuries caused substantial impairments. 28 Kan. App. 2d at 310. It also found that "[t]he evidence established that Pruter's injuries did not create or even come close to a permanent *total* disability" and pointed out that under K.S.A. 44-510c(a)(2), a total disability renders the employee "completely and permanently incapable of engaging in any type of substantial and gainful employment." 28 Kan. App. 2d at 311. We agree.

Pruter argues that the schedules in K.S.A. 44-510d are exceptions to the Act's "general rule" to compensate employees for economic loss due to work-related injuries. The Court of Appeals rejected Pruter's argument that K.S.A. 44-510d should be narrowly construed, finding that K.S.A. 44-510d states the general rule for injuries to scheduled members and the *Honn* rule is the exception. The Court of Appeals said:

"We discern no logical reason to compensate an employee who sustains a comparatively minor dual injury different from an employee who sustains two injuries

at different times. Under the Board's view, an employee who broke her ankle on day one and returned to work several days later, only to fall and break her wrist on day four, would be compensated differently from the employee sustaining both injuries in the same fall. The impact of the two injuries in both contexts are not significantly different." 28 Kan. App. 2d at 311.

Although we agree with the Court of Appeals' reasoning that scheduled injuries are the general rule and nonscheduled injuries are an exception to the rule, the above quote is subject to question. The Court of Appeals failed to acknowledge that such a difference in compensation is possible, maybe even expected, under the Act. For example, simultaneous injuries to parallel limbs (*i.e.*, two arms or two legs) would be compensated differently from instances where one limb was injured one day and several days later the other limb was injured. There, the impact of the two injuries in both contexts may be significantly different, but there is no question that the compensation would be different under the Act.

Regardless, the scheduled injury statute, K.S.A. 44-510d, is not an exception to K.S.A. 44-510e, which relates to general disabilities. As the respondent points out, the scheduled injury statute precedes the general disabilities statute. Also, the clear language of K.S.A. 44-510e belies any question that scheduled injuries are the general rule:

"(a) . . .[E]xcept that in case of temporary or permanent partial general disability *not covered by such schedule*, the employee shall receive weekly compensation as determined in this subsection . . . . Permanent partial general disability exists when the employee is disabled in a manner which is partial in character and permanent in quality and *which is not covered by the schedule* in K.S.A. 44-510d and amendments thereto." (Emphasis added.)

Thus, K.S.A. 44-510d states the general rule for injuries to scheduled members, and the *Honn* rule is the exception. If any rule is to be narrowly construed, it must be the exception created in *Honn*.

In her petition for review, Pruter points to the language of K.S.A. 44-510d(b), which references an employee's entitlement to compensation for "a specific injury under the foregoing schedule." She claims that this language supports her theory that only *single* scheduled injuries are compensated according to the schedule. We agree

with the Court of Appeals, this argument was made and rejected in *Rogers*. See *Rogers*, 158 Kan. at 698; *Pruter*, 28 Kan. App. 2d at 306-07.

Pruter notes that since the *Honn* decision, the permanent total disability statute was amended in 1959 to provide: "Loss of both eyes, both hands, both arms, both feet, or both legs, *or any combination thereof*, in the absence of proof to the contrary, shall constitute permanent total disability." (Emphasis added.) K.S.A. 44-510c(a)(2). See L. 1959, ch. 220, § 1. There are two possible interpretations of this statutory language: (1) Any combination of both eyes, both hands, both arms, both feet, or both legs would also constitute permanent total disability; or (2) the combined loss of any of the listed members (eye, hand, arm, foot, leg) would also constitute permanent total disability. Pruter adopts the latter interpretation. The respondent adopts the former. We find no legislative history to help us in our inquiry as to legislative intention.

In interpreting statutes, we must avoid interpretations that would lead to absurd or unreasonable results. *Landry v. Graphic Technology, Inc.*, 268 Kan. 359, 370, 2 P.3d 758 (2000). If the 1959 amendment to 44-510 is given the interpretation suggested by the respondent, that the "combination" must be the loss of multiple matched pairs of scheduled body parts (*i.e.*, *both* hands and *both* feet), then the amendment added nothing to the statute, since the loss of any single matched pair (*i.e.*, *both* hands or *both* feet) already raised the presumption of permanent total disability. Such an interpretation is unreasonable. We have said: "When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment. [Citation omitted.]" *U.S.D. No. 501 v. Baker*, 269 Kan. 239, 245, 6 P.3d 848 (2000).

The respondent cites *Stanley v. United Iron Works Co.*, 160 Kan. 243, 160 P.2d 708 (1945), where we found that the simultaneous permanent partial loss of the sight of an eye (one scheduled injury) and hearing in the ears (another scheduled injury) fit within the purview of the schedule and said that "such disabilities are compensable as scheduled injuries." 160 Kan. 243, Syl. ¶ 3. However, the type of combination injury in *Stanley* does not fit into the

purview of the statutory presumption of permanent total disability in K.S.A. 44-510c. *Cf. Jackson v. Stevens Well Service*, 208 Kan. 637, 639, 643, 493 P.2d 264 (1972) (two scheduled injuries coupled with an unscheduled injury and a finding that the employee was totally disabled permitted an award of temporary total disability benefits rather than scheduled benefits).

As seen in *Rogers, Stanley*, and *Wammack*, we have consistently found that two simultaneous scheduled injuries do not necessarily result in a whole body disability. The statutory schedule does not purport to provide compensation for two of any one body part, except both ears. See K.S.A. 44-510d(a)(19). The respondent notes that the award for the loss of hearing in both ears is about four times greater than the award for the loss of hearing in one ear. *Cf.* K.S.A. 44-510d(a)(19), (20). Thus, according to the respondent the legislature contemplated that the loss of use of parallel body parts is more serious than the loss of one.

Under the language of K.S.A. 44-510c, controlling case law interpreting the statute, and the presumption of an intent to change the law, we find that by the 1959 amendment to K.S.A. 44-510, the legislature intended that the combined loss of any of the listed members (eye, hand, arm, foot, leg) raises a presumption that the injured worker suffered permanent total disability.

Pruter's combination injuries to her right arm and right leg should have been presumed to constitute a permanent total disability, consistent with the reasoning in *Honn*. However, K.S.A. 44-510c(a)(2) says that such a combination injury is presumed to constitute a permanent total disability "in the absence of proof to the contrary." Here, as the Court of Appeals noted, Pruter sustained relatively minor injuries. The Board adopted the ALJ's findings, specifically that Pruter sustained only a 6% permanent impairment to her right upper extremity and a 7% permanent impairment to her right lower extremity. It was concluded that her impairment ratings would translate to a 7% functional impairment to the body as a whole. The evidence did not show that Pruter's injuries rendered her "completely and permanently incapable of engaging in any type of substantial and gainful employment," as required under K.S.A. 44-510c(a)(2). The evidence showed that Pruter was able to

return to her position at Larned earning a comparable rate of pay. Under the facts here, the Court of Appeals was correct in concluding that Pruter's benefits should have been calculated based on two scheduled injuries.

We affirm the Court of Appeals' decision reversing the decision of the Board and remanding this case for calculation of the benefits based on two scheduled injuries.

Affirmed.