180 P.3d 584 (2008)
Sandra Kay MYERS, Claimant/Appellee,
v.
LINCOLN CENTER OB/GYN, P.A., Respondent/Appellant, and
Twin City Fire Insurance Co., Insurance Carrier/Appellant.
No. 98,445.
Court of Appeals of Kansas.
April 4, 2008.
*586 Patricia A. Wohlford, of Law Offices of Steven G. Piland, of Overland Park, for appellants.
Jeff K. Cooper and Gary M. Peterson, of Topeka, for appellee.
Before HILL, P.J., MALONE, J., and BUKATY, S.J.
MALONE, J.
Lincoln Center OB/GYN, P.A. (Lincoln Center) and its insurance carrier appeal the decision of the Kansas Workers Compensation Board (Board) in favor of Sandra Kay Myers. Lincoln Center raises two issues. First, Lincoln Center claims the Board erred in finding that Myers provided timely notice of her work-related injury. Second, Lincoln Center claims the Board erred in calculating Myers' award as a permanent partial general disability rather than as a scheduled injury.
Myers worked for Lincoln Center from 1998 until her termination in December 2004. The positions she held at Lincoln Center included receptionist, switchboard operator, and medical records supervisor. At the time of her termination, Myers was working as a switchboard operator.
In 2003, Myers began experiencing numbness and pain in her fingers and had trouble pushing buttons and using a computer keyboard and mouse. Myers was concerned that the condition might be related to her diabetes, so she went to see Dr. Fajardo, who treated her for diabetes. Dr. Fajardo referred Myers to Dr. Michael Schmidt, who saw Myers in September 2004.
At Myers' first appointment with Dr. Schmidt on September 14, 2004, she completed a "face sheet" containing personal information. On this form, Myers indicated that her condition was not work related. At this appointment, Dr. Schmidt diagnosed Myers with carpal tunnel in her right wrist and scheduled her for EMG/nerve conduction studies of her right arm.
Dr. Schmidt saw Myers again on September 28, 2004, following the EMG. At this time, he diagnosed her with severe carpal tunnel syndrome on her right upper extremity and moderate on her left upper extremity. Dr. Schmidt also told Myers that the carpal tunnel was work related. He wanted to perform surgery on Myers in 2 days, on September 30. Myers called her supervisor at Lincoln Center, Jenise Weakland, who asked Myers to reschedule the surgery for October 4. Myers rescheduled the surgery, and a carpal tunnel release was performed on Myers' right upper extremity on October 4. Myers was off work for 13 days following the surgery and was paid sick leave. The surgery cost was covered under her husband's health insurance policy.
On October 19, 2004, Dr. Schmidt released Myers to return to full-duty work as a receptionist. Myers returned to work at a modified position as a switchboard operator.
On December 1, 2004, Lincoln Center terminated Myers' employment. The decision to terminate Myers was made by Weakland, who claimed the decision was based on Myers' failure to comply with terms set forth in a department-wide meeting held on November 11, 2004.
At an appointment with Dr. Schmidt on December 7, 2004, Myers indicated she had been terminated and wanted to go ahead with the carpal tunnel release on her left side. The surgery was performed on January 25, 2005.
On December 9, 2004, Myers' counsel sent Lincoln Center notice of her workers compensation claim. The case proceeded to a hearing before the administrative law judge (ALJ). The issues before the ALJ were whether Myers suffered personal injury by accident on the dates alleged, whether the injury arose out of and in the course of Myers' employment, whether notice was given, and the nature and extent of impairment.
*587 The ALJ determined that Myers suffered personal injury by accident out of and in the course of her employment at Lincoln Center, that she was entitled to hospital and medical care, and that she should be held harmless for the expense of her care by Dr. Schmidt. The ALJ also found that Myers had provided timely notice of her injury. After finding that Myers made a good-faith effort to retain her employment, the ALJ concluded that Myers was entitled to payments for a permanent partial disability of 79%.
Lincoln Center appealed to the Board. On March 15, 2007, the Board issued an order affirming the ALJ's findings, making several additional findings, and affirming the ALJ's award. Lincoln Center timely appeals.

Notice of the work-related injury
Lincoln Center first argues that its responsibility for Myers' carpal tunnel treatment prior to December 2004 should be limited to the $500 cap on unauthorized medical expenses under K.S.A. 44-510h(b)(2) because Myers provided untimely and insufficient notice to Lincoln Center as to the injury and treatment of her right hand. According to Lincoln Center, Myers did not provide notice of her injury until her counsel sent notice of the claim on December 9, 2004. Lincoln Center is not denying liability for Myers' medical expenses after December, 2004.
Whether a claimant has provided timely notice of an accident to an employer under K.S.A. 44-520 is a question of fact. See Wietharn v. Safeway Stores, Inc., 16 Kan.App.2d 188, 194, 820 P.2d 719, rev. denied 250 Kan. 808 (1991). An appellate court's scope of review of questions of fact in a workers compensation case is limited to whether the Board's findings of fact are supported by substantial competent evidence. Titterington v. Brooke Insurance, 277 Kan. 888, 894, 89 P.3d 643 (2004).
"Substantial evidence" in a workers compensation case is evidence that possesses something of substance and relevant consequence and carries with it fitness to induce the conclusion that the award is proper, or furnishes a substantial basis of fact from which the issue raised can be reasonably resolved. An appellate court reviews the evidence in the light most favorable to the prevailing party and does not reweigh the evidence or assess the credibility of the witnesses. Neal v. Hy-Vee, Inc., 277 Kan. 1, 16-17, 81 P.3d 425 (2003). An appellate court will uphold findings supported by substantial evidence even though evidence in the record would have supported contrary findings. Poff v. IBP, Inc., 33 Kan.App.2d 700, 706, 106 P.3d 1152 (2005).
K.S.A. 44-520 sets forth the claimant's notice requirements in a workers compensation case:
"Except as otherwise provided in this section, proceedings for compensation under the workers compensation act shall not be maintainable unless notice of the accident, stating the time and place and particulars thereof, and the name and address of the person injured, is given to the employer within 10 days after the date of the accident, except that actual knowledge of the accident by the employer or the employer's duly authorized agent shall render the giving of such notice unnecessary. The ten-day notice provided in this section shall not bar any proceeding for compensation under the workers compensation act if the claimant shows that a failure to notify under this section was due to just cause, except that in no event shall such a proceeding for compensation be maintained unless the notice required by this section is given to the employer within 75 days after the date of the accident unless (a) actual knowledge of the accident by the employer or the employer's duly authorized agent renders the giving of such notice unnecessary as provided in this section."
The Board's relevant findings and conclusions regarding the notice issue were as follows:
"At her first appointment with Dr. Schmidt on September 14, 2004, the claimant checked that her condition was not work-related on the new patient information sheet. The doctor referred claimant for an EMG/nerve conduction study. The studies showed claimant had severe carpal tunnel syndrome on the right and moderate on the left. The claimant testified that *588 at her next scheduled medical appointment on September 28, 2004, Dr. Schmidt told her the results of the nerve conduction studies and further told her the condition was work-related.
"The claimant immediately contacted her supervisor, Jenise Weakland, and told her that she had been diagnosed with carpal tunnel syndrome, surgery had been scheduled and the doctor had said the condition was work-related. Claimant testified that her supervisor said she would take care of it. When first deposed Ms. Weakland testified that she remembered claimant telling her she had been diagnosed with carpal tunnel syndrome and that surgery had been scheduled but she did not remember claimant saying the condition was work-related. When again deposed approximately six months later, Ms. Weakland denied claimant said her condition was work-related.
"The claimant initially sought treatment for her hand problems from her personal physician who referred her for treatment. When she sought that treatment she still thought her condition was related to her diabetes. Upon being told that her condition was work-related, claimant immediately contacted her supervisor and told her the doctor had said the condition was work-related. The Board finds claimant's testimony more persuasive than the equivocal testimony from her supervisor. The Board finds claimant has met her burden of proof to establish that she provided timely notice of her injuries to respondent."
The Board determined that Myers' conversation with Weakland on September 28, 2004, constituted sufficient notice of her carpal tunnel injuries. The Board's findings are supported by Myers' testimony that she informed Weakland of the injury, that the injury was work related, and that the surgery was scheduled to occur in 2 days. Myers testified that Weakland said she would "take care of it," and it is undisputed that Weakland asked Myers to reschedule the surgery and Myers complied. Weakland apparently did not otherwise object to the treatment, physician, or scheduling.
The ALJ and the Board clearly made credibility determinations in choosing to believe Myers' version of events. To the extent that Lincoln Center disputes this version of events, it is asking this court to revisit the ALJ's and Board's credibility determinations, which this court will not do. See Neal, 277 Kan. at 17, 81 P.3d 425. Thus, we affirm the Board's decision that Myers provided timely notice of her work-related injury.

Award for permanent partial general disability
Lincoln Center next argues that the ALJ and the Board erred in calculating Myers' award as a permanent partial general disability. It contends that the recent case Casco v. Armour Swift-Eckrich, 283 Kan. 508, 154 P.3d 494 (2007), dictates that Myers' bilateral injury be calculated under the schedule of injuries set forth in K.S.A. 44-510d. Even if Casco does not apply, Lincoln Center argues that Myers is not entitled to the award because she did not make a good-faith effort to find comparable employment.
In Casco, the Kansas Supreme Court determined that Pruter v. Larned State Hospital, 271 Kan. 865, 26 P.3d 666 (2001), established the proper analysis for calculating compensation when the claimant has a loss of both eyes, both hands, both arms, both feet, both legs, or any combination thereof. Casco, 283 Kan. at 527, 154 P.3d 494. The court in Casco stated:
"The analysis begins with a determination of whether the claimant has suffered a permanent total disability. K.S.A. 44-510c(a)(2) establishes a rebuttable presumption in favor of permanent total disability when the claimant experiences a loss of both eyes, both hands, both arms, both feet, or both legs or any combination thereof. If the presumption is not rebutted, the claimant's compensation must be calculated as a permanent total disability in accordance with K.S.A. 44-510c. Pruter, 271 Kan. at 875-76 [26 P.3d 666].
"If the presumption of permanent total disability is rebutted with evidence that the claimant is capable of engaging in any type of substantial and gainful employment, the claimant's award must be calculated *589 as a permanent partial disability. See K.S.A. 44-510c(a)(2); Pruter, 271 Kan. at 875-76 [26 P.3d 666]. Although both K.S.A. 44-510d and K.S.A. 44-510e apply to permanent partial disability, we note that eyes, hands, arms, feet, and legs are all included in the schedule. See K.S.A. 44-510d(a)(11)-(17). Because the legislature has made the schedule of injuries the general rule and permanent partial disability the exception to the rule, the claimant's compensation must be calculated in accordance with the K.S.A. 44-510d for scheduled injuries. See, e.g., Pruter, 271 Kan. at 876 [26 P.3d 666]." Casco, 283 Kan. at 527-28, 154 P.3d 494.
The Casco court noted that the Pruter analysis effectively overruled Honn v. Elliott, 132 Kan. 454, 458, 295 P. 719 (1931), which held that compensation for the loss of the claimant's two feet in the same accident should be calculated as either a total or partial disability not covered by the schedule. 283 Kan. at 526-27, 154 P.3d 494.
In her response, Myers does not contest that the law set forth in Casco is correct but argues that Casco should not be applied retroactively to her case, since Casco was decided after the Board issued its order. As Myers notes, Casco was decided on March 23, 2007, after the Board's order in this case was issued on March 15, 2007, and before the notice of appeal was filed on April 12, 2007. Thus, the question before this court is whether the law set forth in Casco should be applied here. This question of law is subject to unlimited review. See Fidelity Bank v. King, 281 Kan. 1278, 1281, 136 P.3d 465 (2006).
The general rule in Kansas and other jurisdictions is that "a decided case is binding not only on those cases arising in the future, but also on those pending when the case is decided." Murphy v. Nelson, 260 Kan. 589, 597, 921 P.2d 1225 (1996); see 21 C.J.S., Courts § 204, p. 204 ("A court decision generally applies retrospectively to cases pending on direct review."). The general rule therefore supports application of Casco to this case.
Myers argues that the law in effect at the time of the worker's injury governs the rights and obligations of the parties. However, the cases cited by Myers in support of her argument deal with legislative changes to the workers compensation statute. Here, there was no legislative change made to the statute. Instead, the Supreme Court corrected its previous interpretation of the statute. It should also be noted that Pruter, on which Casco relied heavily and which the Casco court stated effectively overruled Honn, was decided on July 13, 2001, well before Myers' injury occurred.
Myers also argues that the factors set forth in Vaughn v. Murray, 214 Kan. 456, 521 P.2d 262 (1974), for deciding whether an overruling decision should be applied retroactively do not support the application of Casco to this case. These factors include: (1) justifiable reliance on the earlier law; (2) the nature and purpose of the overruling decision; (3) res judicata; (4) vested rights, if any, which may have accrued by reason of the earlier law; and (5) the effect retroactive application may have on the administration of justice. Vaughn, 214 Kan. at 464, 521 P.2d 262.
Examining these factors in the light of this case show that they do not support Myers' argument. As previously noted, the Casco court stated that Honn was effectively overruled by Pruter, which was in existence at the time of the injury here, reducing Myers' justification for her reliance on Honn. The Casco court made it clear that its purpose in overruling Honn was to end the "flouting of the rules" and the "short-changing" of the law that occurred under the Honn analysis. Casco, 283 Kan. at 527, 154 P.3d 494. There appears to be no res judicata consideration here. Because Pruter had set forth the correct analysis by the time of Myers' injury, it is questionable that Honn provided her with any vested rights. Finally, it is not apparent that following the general rule and applying Casco to those cases pending when it was decided will create any crisis in the administration of justice.
Furthermore, there is no indication in Casco that the decision was to be applied only prospectively. Another panel of this court has already applied the law set forth in Casco *590 to a case in which the injury occurred prior to the Casco decision. See Cully v. Earthgrains/Sara Lee Bakery Group, No. 97,311, 2008 WL 142329, unpublished opinion filed January 11, 2008, slip op. at 6-8.
We conclude that the Casco decision applies to all workers compensation cases pending when Casco was decided. Thus, Myers' award must be calculated pursuant to the analysis set forth in Casco. Because such analysis may require further findings of fact, the case is remanded to the Board for further proceedings. Based on this determination, we need not address Lincoln Center's argument that Myers did not make a good-faith effort to find comparable employment.
Affirmed in part, reversed in part, and remanded.