NOT DESIGNATED FOR PUBLICATION

No. 122,934

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PATRICK O'NEAL,
*Appellee*,

v.

CITY OF HUTCHINSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed November 19, 2021. Affirmed.

*William L. Townsley III* and *T. Chet Compton*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellant.

*Melinda G. Young*, of Bretz & Young, LLC, of Hutchinson, for appellee.

Before MALONE, P.J., POWELL and CLINE, JJ.

PER CURIAM: Patrick O'Neal, who at the time was employed by the City of Hutchinson as a firefighter, filed a workers compensation claim alleging bilateral hearing loss and tinnitus stemming from a fire truck's air horn going off inside the fire station. The City's medical expert, Dr. Robert Epp, testified that O'Neal's hearing loss was due to repeated exposure to loud noises over the course of O'Neal's career. This prompted O'Neal to file a new claim alleging repetitive trauma from his employment as a firefighter as the cause of his hearing loss before his first claim had been resolved. Ultimately, the Kansas Workers Compensation Appeals Board (the Board) reversed O'Neal's single accident claim award but affirmed in part and modified in part the award for his repetitive

1

trauma claim. The City now appeals the Board's award, principally arguing that the doctrine of res judicata, which prohibits a party from relitigating a claim which could have been brought in a prior proceeding, barred O'Neal's repetitive trauma claim. For reasons we more fully explain below, res judicata did not bar O'Neal's repetitive trauma claim as O'Neal lacked any evidence to bring his repetitive trauma claim at the time he was litigating his single accident claim. O'Neal initiated his second claim immediately upon learning the evidence establishing his repetitive trauma claim. Thus, we affirm the Board.

FACTUAL AND PROCEDURAL BACKGROUND

O'Neal worked for the City's fire department from May 1994 until September 2017 and originally filed a claim for hearing loss based on a single accident—a fire truck's air horn going off inside the fire station on February 23, 2009, as O'Neal walked in front of it. O'Neal alleged permanent hearing loss and tinnitus. Dr. Peter Bieri examined O'Neal and, at a deposition on April 11, 2016, testified that O'Neal's hearing loss was from the fire truck incident as O'Neal described it to him.

Dr. Robert Epp also examined O'Neal on May 10, 2016. During his deposition, Dr. Epp testified it was more likely than not that O'Neal's hearing loss was due to repeated exposure to loud noises over the course of O'Neal's career as a firefighter.

The Administrative Law Judge (ALJ) found O'Neal had sustained a 2% impairment, but, on appeal by the City, the Board held O'Neal had failed to show the February 23, 2009 accident caused his permanent hearing loss and reversed the award. *O'Neal v. City of Hutchinson*, No. 1,054,014, 2017 WL 1330450, at *5 (Kan. Work. Comp. App. Bd. March 7, 2017).

On July 11, 2016, while his first claim was still pending, O'Neal filed a new workers compensation claim for permanent hearing loss and tinnitus due to repetitive exposure to loud noises at work. The parties stipulated to the admission of Dr. Epp's testimony from the first case. Also, because of Dr. Bieri's unexpected death, the parties agreed to admit his deposition from the first case. Dr. Epp's deposition was also taken a second time, in which he reiterated his testimony that O'Neal's injury was from repetitive exposure at work.

On December 13, 2019, the ALJ entered an Award finding O'Neal sustained a 2% impairment to his body as a whole from the repetitive trauma. The City appealed to the Board, arguing O'Neal's claim was barred by res judicata, the City never received proper notice, and O'Neal did not provide evidence that he was entitled to a compensation award. The Board entered an order affirming the ALJ's award in part and modifying in part. The Board found O'Neal sustained 0% permanent impairment but awarded him compensation for unauthorized and future medical treatment.

The City seeks judicial review of the Board's order.

ANALYSIS

The City has petitioned for judicial review of the Board's order under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. See K.S.A. 2019 Supp. 44-556(a) (Board order subject to review under KJRA). We may grant relief when reviewing the Board's actions only if we determine it violated one or more of the provisions listed in K.S.A. 77-621(c). See *Board of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 318, 393 P.3d 601 (2017). The City invokes three of those provisions.

First, the City alleges the Board erroneously interpreted or applied the law. See K.S.A. 77-621(c)(4). Whether this is so is a legal question subject to our de novo review without deference to the Board's interpretation or application of the law. *Mera-Hernandez v. U.S.D. 233*, 305 Kan. 1182, 1185, 390 P.3d 875 (2017).

Second, the City alleges the Board's action is based upon a determination of fact, made or implied by it, "that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review . . . ." See K.S.A. 77-621(c)(7). "'Substantial evidence' in a workers compensation case is evidence that possesses something of substance and relevant consequence and carries with it fitness to induce the conclusion that the award is proper, or furnishes a substantial basis of fact from which the issue raised can be reasonably resolved." *Myers v. Lincoln Center OB/GYN, P.A.*, 39 Kan. App. 2d 372, 375, 180 P.3d 584 (2008).

> "'[I]n light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 77-621(d).

Even with evidence supporting the Board's decision, we "must consider 'whether the evidence supporting the [Board's] decision has been so undermined by cross-examination or other evidence that it is insufficient to support'" the Board's decision. *Romkes v. Univ. of Kansas*, 49 Kan. App. 2d 871, 889, 317 P.3d 124 (2014).

Third, the City alleges the Board's action is "otherwise unreasonable, arbitrary or capricious." See K.S.A. 77-621(c)(8). An action is "'arbitrary and capricious' if it is unreasonable or 'without foundation in fact.'" *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 970, 186 P.3d 829 (2008). An action is unreasonable if "it is taken without regard to the benefit or harm to all interested parties . . . . [T]he test under K.S.A. 77-621(c)(8) determines the reasonableness of the [Board's] exercise of discretion in reaching its decision based on [its] factual findings and the applicable law. [Citations omitted.]" *Wheatland Electric Coop. v. Polansky*, 46 Kan. App. 2d 746, 757, 265 P.3d 1194 (2011). Factors to consider include whether: (1) the Board relied on factors the Legislature did not intend it to consider; (2) the Board "entirely failed to consider an important aspect" of the issue; (3) the Board's explanation of its action conflicts with the evidence in front of it; and (4) the Board's "explanation is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." 46 Kan. App. 2d at 757.

As the party asserting the invalidity of the Board's action, the City bears the burden to prove the Board's actions were invalid at the time they were taken because of the "'strong presumption of regularity in administrative proceedings.'" *Board of Cherokee County Comm'rs*, 306 Kan. at 321; see K.S.A. 77-621(a)(1) (burden of proof); K.S.A. 77-621(a)(2) (validity of agency action).

I.    WAS O'NEAL'S REPETITIVE TRAUMA CLAIM BARRED BY RES JUDICATA?

The City's primary argument on appeal is that res judicata bars O'Neal's repetitive trauma claim. The City claims O'Neal's repetitive trauma claim is for bilateral hearing loss and tinnitus, the same injuries alleged in his first workers compensation claim, and that the Board erred by overlooking the fact that O'Neal could have raised his repetitive trauma claim in his first claim. The City also argues the Board erred by finding the first proceeding was not a final judgment on the merits.

O'Neal responds with the assertion that the two claims are different because his single accident claim was based on one event on the day of the accident, while his repetitive trauma claim is based on his continued work as a firefighter for the City over the course of many years. O'Neal also argues there was no final determination on the merits because the Board never made a determination based on repetitive trauma or the compensability of O'Neal's injury.

*Analysis*

Res judicata (also called claim preclusion) is "a common-law rule of equity grounded in both notions of justice and in sound public policy, each of which demands that a party not be vexed with litigation twice on the same cause." *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196 (2015); see *In re Tax Application of Fleet*, 293 Kan. 768, 777, 272 P.3d 583 (2012) (res judicata also referred to as claim preclusion). Res judicata applies to administrative proceedings when the agency acted in a judicial capacity and the first administrative proceeding provided procedural protections similar to court proceedings. 293 Kan. at 779. Res judicata's applicability is a legal question subject to de novo review. 293 Kan. at 777.

Res judicata requires four elements be satisfied: "(1) the same claim; (2) the same parties; (3) claims that were or could have been raised; and (4) a final judgment on the merits." 293 Kan. at 777-78. If any element is not met, res judicata does not apply. See *In re Care & Treatment of Sigler*, 310 Kan. 688, 699, 448 P.3d 368 (2019).

When applying res judicata, "Kansas courts must be mindful of the equitable principles animating the doctrine," considering "the substance of both the first and subsequent action," not just their procedural form. *Cain*, 302 Kan. at 434. The doctrine is liberally applied but "requires a flexible and common-sense construction" to achieve "its

6

fundamental goals which are embedded in the requirements of justice and sound public policy." 302 Kan. at 435.

In reaching its decision, the Board applied a different, three-element test based on a prior Board order which relied on a federal case. As the City highlights, that test omitted "whether the claim could have been raised" as an element of res judicata. But Kansas law utilizes the four-part test cited in *In re Care & Treatment of Sigler*. Nevertheless, the Board's use of the incorrect test does not end the analysis because the question of whether res judicata applies to the Board's action is subject to our de novo review. Thus, we can examine anew the City's res judicata defense.

1.      *Same claim*

"'In general, [claim] connotes a natural grouping or common nucleus of operative facts. Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held precluded.' Restatement (Second) of Judgments § 24, Comment b, p. 199.
. . . .
"'Having been defeated on the merits in one action, a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground. This does not constitute the presentation of a new claim when the new premise or ground is related to the same transaction or series of transactions, and accordingly the second action should be held barred.' Restatement (Second) of Judgments § 25, Comment d." *Stanfield v. Osborne Indus., Inc.*, 263 Kan. 388, 401, 949 P.2d 602 (1997).

7

The City argues O'Neal's single accident and repetitive trauma claims are actually the same claim because both allege work-related hearing loss and tinnitus. The only difference in the claims, the City asserts, is the theory of recovery—single accident versus repetitive trauma—which the City maintains is insufficient to overcome res judicata. Additionally, the City argues that if O'Neal's claims are two different claims, his repetitive trauma claim could have been raised in the single accident action.

We think the City's alternative argument that O'Neal's repetitive trauma claim could have been brought in his single accident claim undermines its argument that both of O'Neal's claims are the same. They are not. His first workers compensation claim was based on a single accident—a fire truck horn sounding when O'Neal was walking in front of it. The nucleus of that claim was based on one accident occurring on February 23, 2009. In contrast, O'Neal's current claim is based on repetitive trauma—hearing loss caused by damage to his ears due to years of repeated exposure to damaging environments.

The Kansas Workers Compensation Act, K.S.A. 44-501 et seq. (the Act), separates accidents and repetitive trauma. An accident is "an undesigned, sudden and unexpected traumatic event." K.S.A. 2019 Supp. 44-508(d). Repetitive trauma is when "an injury occurs as a result of repetitive use, cumulative traumas or microtraumas." K.S.A. 2019 Supp. 44-508(e).

Though O'Neal does assert the same injury—bilateral hearing loss and tinnitus—in both claims, the claims are not the same. An accident and a repetitive trauma are different claims under the Act. In his first claim, O'Neal focused on a single point in time, one moment on one day of his job. In his second, O'Neal's claim was based on his entire career working for the City. The timeframe is greater and requires proof of more incidents. The key fact in his single accident claim was the difference in his hearing before and after February 23, 2009. For his repetitive trauma claim, the Board needed to

8

analyze all of O'Neal's hearing tests for evidence that his hearing ability had decreased while working for the City.

O'Neal's repetitive trauma claim is not the same claim as his single accident claim.

2. *Same parties*

O'Neal and the City were the same parties in both the single accident and repetitive trauma actions. Neither party disputes this. This element is met.

3. *Claims that were or could have been raised*

Res judicata's third element can be satisfied in two ways: O'Neal asserted claims against the City that he could have asserted, but did not, in his earlier suit, or O'Neal attempted to reassert the same claim in a second suit. "In other words, res judicata prohibits a [claimant] from filing a successive suit against a [respondent] based either on factually related claims omitted from an earlier suit or on claims actually asserted and lost on a final judgment on the merits in the earlier suit." *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 259, 261 P.3d 943 (2011).

Much of the City's res judicata argument focuses on the Board not addressing the "could have been raised" argument. The City argues O'Neal could have raised the repetitive trauma claim in his first single accident case but chose to pursue a different strategy. O'Neal responds that he could not have brought a repetitive trauma claim until he had evidence to support such a claim and that such evidence did not appear until Dr. Epp testified in his deposition that repetitive trauma caused the hearing loss. O'Neal argues he filed his repetitive trauma claim as soon as practicable and did so in a separate proceeding because the evidence had been concluded in the first.

The record shows O'Neal filed his repetitive trauma claim while his single accident claim was still pending—a fact the City acknowledges. O'Neal filed his repetitive trauma claim on July 11, 2016, over three months before the ALJ issued an award on his single accident claim on October 28, 2016, and almost eight months before the Board reversed that award on March 7, 2017. *O'Neal*, 2017 WL 1330450, at \*1.

The Board determined the date of injury was April 11, 2016, the date Dr. Bieri testified. Additionally, Dr. Epp examined O'Neal on May 10, 2016, although there is no evidence Dr. Epp informed O'Neal of his conclusions then. Dr. Epp did testify in his June 20, 2016 deposition that O'Neal's injuries were caused by repetitive trauma from his career working as a firefighter.

There is no evidence O'Neal knew before Dr. Bieri's or Dr. Epp's depositions that his bilateral hearing loss and tinnitus were caused by repetitive trauma rather than a single accident. Thus, O'Neal could not have raised his repetitive trauma claim when he filed his single accident claim because he did not have any knowledge at that time that his injuries were caused by repetitive trauma from working as a firefighter. Moreover, O'Neal's contention that adding an additional repetitive trauma claim to his original single accident claim was impractical—given the evidence in his single accident claim had closed—makes sense.

This element of res judicata was not met.

4.      *Final judgment on the merits*

The Board found there was not a final judgment on the merits in the single accident claim because there was no determination on the compensability of a repetitive trauma claim. The Board is correct that there was no final determination on

10

compensability for repetitive trauma, but its determination that there was no final judgment on the merits is incorrect.

In his first claim, O'Neal asserted his bilateral hearing loss and tinnitus was caused by a single accident of the fire truck horn sounding off on February 23, 2009. On appeal by the City, the Board reached the merits and issued a final judgment on this issue, reversing the ALJ's award. *O'Neal*, 2017 WL 1330450, at *5.

But the Board is right that no judgment was reached on a repetitive trauma claim because no repetitive trauma claim was raised. Perhaps the Board's mistake comes from applying the wrong res judicata test. Under Kansas law, it is not just claims raised in the original action that can trigger res judicata but also claims that could have been raised. See *In re Tax Appeal of Fleet*, 293 Kan. at 777-78. To say there was no final judgment on the merits because there was no decision on the repetitive trauma claim has the effect of eliminating this element. If a party could avoid a res judicata bar because there was no final judgment on the merits when it could have been raised but was not, the third element of res judicata would be meaningless.

O'Neal's first claim was based on a single accident. The Board reached a final judgment on the merits. The "final judgment on the merits" element was met.

All four elements must be met for res judicata to apply and bar a claim. *In re Sigler*, 310 Kan. at 699. Here, the claims were not the same, and O'Neal could not have raised his repetitive trauma claim when he filed his first workers compensation claim. Res judicata does not apply. Although the Board applied the incorrect test, it reached the correct result. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) (correct result will be upheld even when relying on wrong reasons).

11

## II.    DID O'NEAL GIVE TIMELY NOTICE OF HIS REPETITIVE TRAUMA CLAIM?

The City presents two alternative arguments as to why we should deny O'Neal relief if we conclude res judicata does not bar his repetitive trauma claim. First, the City claims O'Neal did not give proper notice to the City of his injury. It claims O'Neal's obligation to provide notice was triggered when he sought treatment on June 10, 2010, not on April 11, 2016, as the Board found. No matter the date of the injury, the City argues O'Neal did not provide notice within the appropriate timeframe.

O'Neal counters the City had actual knowledge of his injury based on the required hearing tests taken during his employment. O'Neal also asserts he made a timely claim because he filed a claim for benefits due within 20 days of learning from Dr. Epp's testimony that his hearing loss was caused by repetitive trauma.

*Analysis*

The Act defines repetitive trauma as

> "an injury [that] occurs as a result of repetitive use, cumulative traumas or microtraumas. The repetitive nature of the injury must be demonstrated by diagnostic or clinical tests. The repetitive trauma must be the prevailing factor in causing the injury. 'Repetitive trauma' shall in no case be construed to include occupational disease, as defined in K.S.A. 44-5a01, and amendments thereto." K.S.A. 2019 Supp. 44-508(e).

For repetitive trauma, the designated day of the injury "'is a legal fiction to fix a date for the assessment of . . . disability benefits. It must not be lost sight of that repetitive trauma cases are a series of accidents, not a single accident.'" *Lott-Edwards v. Americold Corp.*, 27 Kan. App. 2d 689, 699, 6 P.3d 947 (2000).

K.S.A. 2019 Supp. 44-520(a)(1) explains when a worker must notify his or her employer of the injury:

"Proceedings for compensation under the workers compensation act shall not be maintainable unless notice of injury by accident or repetitive trauma is given to the employer by the earliest of the following dates:

"(A) 20 calendar days from the date of accident or the date of injury by repetitive trauma;

"(B) if the employee is working for the employer against whom benefits are being sought and such employee seeks medical treatment for any injury by accident or repetitive trauma, 20 calendar days from the date such medical treatment is sought; or

"(C) if the employee no longer works for the employer against whom benefits are being sought, 10 calendar days after the employee's last day of actual work for the employer."

The notice requirement in K.S.A. 2019 Supp. 44-520(a)(1) is waived if the employee proves "[t]he employer or the employer's duly authorized agent had actual knowledge of the injury . . . ." K.S.A. 2019 Supp. 44-520(b)(1).

The City challenges the Board's designated accident date and the Board's finding that the City had notice of O'Neal's injury. Designating the injury date in a repetitive trauma case is not a factual determination because the assignment of a single date as the "'accident date'" is "inherently artificial" and is a legal question. *Saylor v. Westar Energy*, 292 Kan. 610, 615, 256 P.3d 828 (2011). As the party asserting error, the City holds the burden to point to evidence in the record to support its claim the Board erred. See K.S.A. 77-621(a)(1).

The Board made two notice findings: First, the injury date was April 11, 2016; second, the City had proper notice before April 11, 2016—in 2002 from the regular hearing tests the City required O'Neal to undergo as a condition of his job.

13

The City disagrees that the 2002 hearing report put it on notice of O'Neal's hearing loss. The City argues the report stated O'Neal's hearing screening was normal, with only upper range hearing loss in the right ear, and the report does not even suggest work activity as a contributor to O'Neal's hearing loss.

The City's interpretation of the 2002 audiogram is contradicted by its expert, Dr. Epp. Dr. Epp testified in his deposition that O'Neal suffered from hearing loss due to noise exposure—more likely than not caused by noise exposure at work. Dr. Epp based his opinion on his review of O'Neal's audiograms from 2002 to 2016. Dr. Epp testified hearing loss from repetitive trauma is normally progressive over five to six years before stabilizing.

The City's required hearing exams showed in 2002 that O'Neal sustained hearing loss. Given that it required its firefighters to undergo hearing tests every other year until age 40 and then every year thereafter, the City was aware firefighters were at risk for hearing loss from their jobs. O'Neal's 2002 audiogram showed he was sustaining hearing loss, and no alternative explanation was given, except for occasionally using firearms. Dr. Epp testified that at the time of the 2002 test, O'Neal more likely than not had sustained hearing loss from his job, which was stabilizing at the time of the test.

The City was on notice, even before the date of the injury, that O'Neal had suffered hearing loss due to repetitive trauma from his work.

III.     DID O'NEAL ESTABLISH HIS ENTITLEMENT TO A COMPENSATION AWARD?

The City's second alternative argument is that O'Neal failed to provide substantial evidence to establish his entitlement to a compensation award. The City argues the only evidence is Dr. Epp's passing comment that there was a possibility that O'Neal's injury was due to occupational noise exposure early in his career. The City refers to this as

14

speculative and points out that O'Neal's tests show the opposite—an already existing condition that did not change during his employment.

O'Neal replies he satisfied his burden. O'Neal points out the City's primary defense in his single accident case was that his injury was based on repetitive trauma and highlights Dr. Epp's testimony as being consistent in both claims that O'Neal's hearing loss came from repetitive exposure at work.

*Analysis*

The claimant in a workers compensation claim bears the burden of proof to establish a right to an award of compensation. *Adee v. Russell Stover Candies, Inc.*, 39 Kan. App. 2d 1017, 1027, 186 P.3d 840 (2008); see K.S.A. 2019 Supp. 44-508(h) (defining burden of proof). But on appeal, the party asserting the Board's action was invalid bears the burden of proving the invalidity. K.S.A. 77-621(a)(1). As a result, the City, which is challenging the Board's action, bears the burden to prove the Board erred.

As we have explained, under the KJRA, we review questions of fact for substantial competent evidence in light of the record as a whole. K.S.A. 77-621(c)(7). This requires us to examine all relevant evidence, both supporting and detracting, in the record. K.S.A. 77-621(d).

Here, the key evidence for O'Neal's repetitive injury claim is the audiograms and Dr. Epp's testimony. The City contends the audiograms show no change in hearing loss from the 2002 audiogram onward. While true, Dr. Epp testified he believed this was because O'Neal's hearing loss stabilized after degenerating for five to seven years from noise exposure at work. The 2002 audiogram does show O'Neal suffered from some hearing loss.

15

Dr. Epp gave a deposition in the single accident case, testifying it was more likely than not O'Neal's hearing loss was attributable to repetitive trauma from his job as a firefighter. When deposed again for the repetitive trauma case, Dr. Epp reiterated he believed O'Neal's hearing loss resulted from occupational activities. In reaching his conclusion, Dr. Epp examined O'Neal and all the audiograms from 2002 onward.

In Dr. Bieri's deposition from the single accident case, Dr. Bieri testified he believed the hearing loss came from the fire truck horn as described to him by O'Neal. But Dr. Bieri also admitted he could not separate the fire truck accident from noise exposure from O'Neal's work.

The City has not met its burden to show the Board erred in granting a compensation award to O'Neal. The City's own expert from the single accident claim provided evidence in support of O'Neal's repetitive injury claim. The evidence is sufficient for a reasonable person to find it supported the Board's compensation award.

Affirmed.